**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:

| | |
|---|---|
| 6200 NE 2ND AVENUE, LLC, | Case No.: 22-10385-RAM |
| | Chapter 11 |
| | Jointly Administered |
| | |
| 5911 NE 2ND AVENUE, LLC | Case No.: 22-10386-LMI |
| 5901 NE 2ND AVENUE, LLC | Case No.: 22-10387-RAM |
| 5900 NE 2ND AVENUE, LLC | Case No.: 22-10388-RAM |
| 5700 NE 2ND AVENUE, LLC | Case No.: 22-10390-RAM |
| 5524 NE 2ND AVENUE, LLC | Case No.: 22-10392-RAM |
| 175 NE 55TH STREET, LLC | Case No.: 22-10391-RAM |
| 6229 NE 2ND AVENUE, LLC | Case No.: 22-14331-RAM |
| 5823 NE 2ND AVENUE, LLC | Case No.: 22-14767-RAM |

      Debtors.
_____/

**DEBTORS' DISCLOSURE STATEMENT IN CONNECTION**
**WITH DEBTORS' THIRD AMENDED PLAN OF REORGANIZATION**

Submitted by: Jointly Administered Debtors
July 2, 2022

Respectfully submitted,

Aaronson Schantz Beiley P.A.

/s/ *Geoffrey S. Aaronson*

Geoffrey S. Aaronson, Esq.
Florida Bar No. 349623
gaaronson@aspalaw.com
Tamara D. McKeown, Esq.
Florida Bar No. 773247
tmckeown@aspalaw.com
One Biscayne Tower
2 S. Biscayne Blvd, 34th Floor
Miami, Florida 33131
Ph: 786.594.3000
Fax: 305.424.9336
*Attorneys for Jointly Administered Debtors*

## Contents

ARTICLE I:   INTRODUCTION .................................................................................................. 3

ARTICLE II:   DEFINITIONS .................................................................................................... 4

ARTICLE III:   DISCLOSURE STATEMENT & VOTING ........................................................ 12

ARTICLE IV:   BACKGROUND INFORMATION.................................................................... 13

ARTICLE V:  SUMMARY OF DEBTS AND THE CHAPTER 11 CASE ................................... 15

ARTICLE VI:  PLAN IMPLEMENTATION .............................................................................. 18

ARTICLE VII:  CLASS TREATMENT ...................................................................................... 20

ARTICLE VIII:  EFFECTIVENESS OF THE PLAN ................................................................. 24

ARTICLE IX: CLAIMS BAR DATE .......................................................................................... 24

ARTICLE X: THIRD-PARTY RELEASES ................................................................................. 25

ARTICLE XI:  ACCEPTANCE OR REJECTION OF THE PLAN............................................. 25

ARTICLE XII:  CONFIRMATION OF THE PLAN ................................................................... 25

ARTICLE XIII:  BINDING EFFECT OF PLAN ........................................................................ 27

ARTICLE XIV: EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................ 28

ARTICLE XV: RISKS OF THE PLAN ....................................................................................... 28

ARTICLE XVI:  LIQUIDATION ANALYSIS ........................................................................... 28

ARTICLE XVII:  INQUIRIES ................................................................................................... 28

ARTICLE XVIII: MISCELLANEOUS ....................................................................................... 28

ARTICLE XIX: CONCLUSION ................................................................................................. 32

2

Aaronson Schantz Beiley P.A. | 2 S. Biscayne Boulevard, Suite 3450 | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

## ARTICLE I:  INTRODUCTION

Jointly administered Chapter 11 Debtors and Debtors in Possession, 6200 NE 2ND AVENUE, LLC, 5911 NE 2ND AVENUE, LLC, 5901 NE 2ND AVENUE, LLC, 5900 NE 2ND AVENUE, LLC, 5700 NE 2ND AVENUE, LLC, 5524 NE 2ND AVENUE, LLC, 175 NE 55TH STREET, LLC, 6229 NE 2ND AVENUE, LLC and 5823 NE 2ND AVENUE, LLC ("**Debtors**"), pursuant to 11 U.S.C. § 1125, file this Disclosure Statement ("**Disclosure Statement**") in support of Debtors' Third Amended Plan of Reorganization [ECF 163] ("**Plan**" or "**Plan of Reorganization**") filed on July 1, 2022.

**NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT REGARDING THE PLAN OR THE SOLICITATION OF ITS ACCEPTANCE.**

**ALL CREDITORS AND INTEREST HOLDERS ARE HEREBY ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, THE EXHIBITS HERETO AND OTHER DOCUMENTS REFERENCED AS FILED WITH THE COURT PRIOR TO OR CONCURRENT WITH THE FILING OF THIS DISCLOSURE STATEMENT. SUBSEQUENT TO THE DATE HEREOF, THERE CAN BE NO ASSURANCE MADE THAT (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN ARE MATERIALLY ACCURATE; OR (B) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.**

**THIS DISCLOSURE STATEMENT HAS BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.**

**THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN. NOTHING CONTAINED HEREIN WILL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE REORGANIZATION OF THE DEBTOR ON HOLDERS OF CLAIMS OR INTERESTS. AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CLAIMS AND CAUSES OF ACTIONS OR THREATENED ACTIONS AGAINST THIRD PARTIES, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.**

**THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR AND HAS NOT BEEN SUBJECT TO INDEPENDENT REVIEW OR TO CERTIFIED AUDIT. THE DEBTOR HAS MADE EVERY EFFORT TO ENSURE THAT THE INFORMATION CONTAINED HEREIN IS COMPLETE AND ACCURATE; HOWEVER, THE DEBTOR IS UNABLE TO**

3

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

**WARRANT OR REPRESENT THAT THIS INFORMATION IS WITHOUT ANY INACCURACY.**

## ARTICLE II:  DEFINITIONS

The capitalized terms used in the Plan shall have the meanings set forth in the numbered Paragraphs of this Article.

1. *"**Administrative Claim**"* shall mean any right to payment constituting a cost or expense of administration of the Case that is Allowed under Sections 503(b) and/or 507(a)(2) of the Code, including, without limitation: (a) any actual and necessary costs and expenses of preserving the Debtor's Estate; (b) any actual and necessary costs and expenses of operating the Debtor's business; (c) any indebtedness or obligations incurred or assumed by the Debtor during the Case; (d) any compensation for professional services rendered and reimbursement of expenses incurred, to the extent Allowed by Final Order under section 330 or 503 of the Code; (e) all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code, and (f) all post-petition taxes.

2. "**Alleged Post Confirmation Default**" or "**Alleged Default**" shall mean an alleged failure to make a payment required under the Plan or a withdrawal of this Plan after confirmation, and the failure to substitute a new Plan substantially similar with respect to the treatment of all creditors prior to substantial consummation. See Article VIII, Section B regarding the effect of a Post Confirmation Default under the Plan. In the event of an Alleged Post-Confirmation Default, the Reorganized Debtor shall have twenty days from the Debtor's receipt of written Notice of an Alleged Default in payment to dispute the alleged failure to pay, or to cure such default. If the payment obligation is not met and the Reorganized Debtor does not cure or dispute such Alleged Default within the twenty-day period, it shall be deemed a Default Event. If there is a dispute as to whether there is a Default Event, such dispute may be resolved by the Court on short notice.

3. *"**Allowed**"* shall mean (i) with reference to any Claim, (a) any Claim against the Debtor, which has been listed by the Debtor in its Schedules (as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1007) as liquidated in amount and not disputed or contingent and for which no proof of claim has been filed, (b) any Claim against the Debtor which is the subject of a duly filed and timely proof of claim that has not been objected to by the Debtor, (c) any Claim as to which the liability of the Debtor and the amount thereof are determined by a Final Order, or (d) any Claim against the Debtor allowed pursuant to this Plan, and (ii) any Administrative Claim or Expense expressly allowed under this Plan or by the Court. Unless otherwise specified in this Plan or ordered by the Court, "Allowed Claim" or "Allowed Administrative Expense" shall not include interest on such Claim or Administrative Expense from and after the Petition Date.

4. *"**ASBPA**"* shall mean the Debtor's Chapter 11 attorneys, Aaronson Schantz Beiley P.A.

5. *"**Ballot**"* shall mean the form or forms distributed for voting on the Plan.

6. *"**Ballot Date**"* shall mean the date set by the Court by which all Ballots must be received.

4

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

7. "**Balloting Agent**" shall mean the Debtor's Chapter 11 attorneys, Aaronson Schantz Beiley P.A.

8. "**Bankruptcy Code**" or "**Code**" shall mean Title 11 of the United States Code, as in effect from time to time, as applicable to this Chapter 11 Case.

9. "**Bankruptcy Court**" or "**Court**" shall mean the United States Bankruptcy Court for the Southern District of Florida (Miami Division), or such other Court having jurisdiction over this Case.

10. "**Bankruptcy Estate**" means the estate created pursuant to Section 541 of the Bankruptcy Code by the commencement of the Debtors' Chapter 11 Cases.

11. "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time as applicable to the Chapter 11 Case, including the Local Rules of the Bankruptcy Court.

12. "**Business Day**" shall mean any day except a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a) and the Court's Local Rules.

13. "**Case(s)**" or "**Chapter 11 Case(s)**" shall mean these Chapter 11 cases.

14. "**Chapter 11 Petition(s)**" or "**Petition(s)**" shall mean the Debtors' Petitions for relief under Chapter 11 filed with the Court on the Petition Date.

15. "**Chemtov**" shall mean Chemtov Mortgage Group Corp., a Florida corporation and private mortgage lender, which held a mortgage on, and obtained a final judgment of foreclosure against, all Little Haiti Debtor Properties.  Chemtov's judgment and Claims have been assigned to LH Gateway.

16. "**Claim**" shall have the meaning ascribed in Section 101(5) of the Code, including, without limitation, any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, uncontested, legal, equitable, secured, or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmeasured, contested, uncontested, secured or unsecured.

17. "**Claims Bar Date (Original)**" shall mean, with respect to the Little Haiti Debtors: (a) March 29, 2022 for any non-governmental claims, which was the general deadline set by the Court for filing any proofs of claim; and (b) July 18, 2022 for any governmental claims, which was the deadline set by the Court for government entities to file any proofs of claim. The Claims Bar Dates may be amended only pursuant to Order of the Court.

18. "**Claims Bar Date (6229 & 5823)**" shall mean, with respect to Debtors 6229 and 5823, the deadline for filing all governmental and non-governmental claims pursuant to a date to be set forth in the Confirmation Order or other Court Order that will issue from the Court.  This

5

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

deadline will supersede the proof of claim deadlines established in the Notices of Chapter 11 Bankruptcy Case filed on June 1, 2022 in Debtor 6229's Case [Case No. 22-14331-RAM, ECF 3], and June 23, 2022 in Debtor 5823's Case [Case No. 22-14767, ECF 9].

19. *"**Claims Objection Date**"* shall mean, with respect to Debtors 6229 and 5823, the deadline pursuant to Confirmation Order or other Order that will issue from the Court in this Case by which Debtors 6229 and 5823 must file objections to claims filed by the Claims Bar Date (6229 & 5823).

20. *"**Class**"* shall mean a group of Claims or Interests with the same respective rights and interests, as classified under the Plan.

21. *"**Collateral**"* shall mean the Debtor's inventory, equipment, accounts, general intangibles, fixtures, money, instruments, securities, documents, chattel paper, deposits, credits, claims, receivables, and other personal property owned by the Debtor, together with the proceeds, products, offspring or profits thereof, as the case may be, in connection with the Debtor's pledge of some or all of these items.

22. "**Confirmation**" shall mean the entry of a Confirmation Order.

23. *"**Confirmation Date**"* shall mean the date on which the Confirmation Order becomes a Final Order.

24. *"**Confirmation Hearing**"* shall mean the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

25. *"**Confirmation Order**"* shall mean the order or orders of the Bankruptcy Court confirming this Plan or any amendments thereto.

26. "**Confirmed Plan**" shall mean this Plan (and any amendments thereto by the Debtor if such has amendments have been approved by the Court) upon and after the Court enters a Confirmation Order.

27. *"**Contested Claim**"* shall mean a Claim (or portion thereof) which: (a) is scheduled, or for which a proof of claim has been deemed filed under applicable law or Order of the Court; and (b) a timely and properly filed objection has not been: (i) withdrawn or resolved by stipulation or (ii) resolved by the Court by a Final Order.

28. *"**Court**"* shall mean the United States Bankruptcy Court for the Southern District of Florida (Miami Division) or any other Court that exercises jurisdiction over this Chapter 11 Case.

29. *"**Creditor**"* shall mean the holder of an Allowed Claim, whether such creditor was scheduled by the Debtor or filed a timely proof of claim.

30. *"**Creditors**"* shall mean all holders of Allowed Claims or assignees of Allowed Claims against the Debtor.

6

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

31. **"Debtors"** shall mean collectively all jointly administered Chapter 11 Debtors and Debtors in Possession:

- 6200 NE 2ND AVENUE, LLC;
- 5911 NE 2ND AVENUE, LLC;
- 5901 NE 2ND AVENUE, LLC;
- 5900 NE 2ND AVENUE, LLC;
- 5700 NE 2ND AVENUE, LLC;
- 5524 NE 2ND AVENUE, LLC;
- 175 NE 55TH STREET, LLC;
- 6229 NE 2ND AVENUE, LLC; and
- 5823 NE 2ND AVENUE, LLC

32. "**Debtor 5823**" shall mean specifically Debtor 5823 NE 2ND AVENUE, LLC.

33. "**Debtor 5823 Properties**" shall mean specifically 5823 NE 2nd Avenue, Miami, Florida, which is a single-story commercial building presently being built out as a restaurant, and 175 NE 59th Street, Miami, Florida, which is presently used as a parking lot, both of which are owned by Debtor 5823.

34. "**Debtor 6229**" shall mean specifically Debtor 6229 NE 2ND AVENUE, LLC.

35. "**Debtor 6229 Property**" shall mean specifically 6229 NE 2nd Avenue, Miami, Florida, which is a single-story commercial building owned by Debtor 6229.

36. **"Little Haiti Debtors"** shall mean all jointly administered Chapter 11 Debtors except for Debtor 6229 and Debtor 5823.

37. "**Little Haiti Debtor Properties**" shall mean collectively the parcels of real property owned by all Debtors except Debtor 6229 and Debtor 5823, all of which are located along the NE 2nd Avenue corridor of the Little Haiti section of Miami, described as follows:

- 6200 NE 2nd Avenue: commercial building and location of the Debtors' management office;
- 6212 N.E. 2nd Avenue: a small mixed-use commercial and residential building which presently is being used for storage and generates limited income;
- 165 N.E. 2nd Street: a vacant lot which presently stores various shipping containers;
- 5911 NE 2nd Avenue:  a small commercial retail building;
- 207 N.E. 59th Street: vacant land, which presently provides storage for shipping containers;
- 5901 N.E. 2nd Avenue: a small mixed-use commercial and residential building;
- 5900 N.E. 2nd Avenue: a small parking lot;
- 185 N.E. 59th Street: a small mixed-use building that contains an artist's studio on the ground floor and three residential units on the second floor;
- 5700 NE 2nd Avenue: a small six-unit commercial retail building;
- 5716 N.E. 2nd Avenue: a small parking lot;

7

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

- 5720 N.E. 2nd Avenue: a small parking lot;
- 5524 N.E. 2nd Avenue: a small retail building;
- 175 N.E. 55th Street: an artist's studio and small residence; and
- 184 N.E. 56th Street: vacant land used for parking large vehicles and trucks.

38. "**Debtor Properties**" shall mean collectively all parcels of real property owned by all Debtors, all of which are located along the NE 2nd Avenue corridor of the Little Haiti neighborhood of Miami.

39. "**Default Event**" shall mean an uncured Alleged Default.

40. "**Deficiency Claim**" shall mean the difference between a Secured Creditor's Secured Claim and the value of the collateral securing the Secured Claim, and as may be reduced by the amount of a Secured Claim of any other Secured Creditors holding a superior interest in the collateral.

41. "**Disclosure Statement**" shall mean this Disclosure Statement filed by Debtors in support of their Plan of Reorganization, as amended.

42. "**DIP Accounts**" shall mean the Debtors' post-petition bank accounts which are reported monthly to the Court and used by the Debtors as Debtors-In-Possession.

43. "**Disputed Claim**" shall mean (i) a liability scheduled on the Debtors' Schedules or Amended Schedules as disputed, contingent or unliquidated; or (ii) a timely filed proof of claim against which an unresolved objection is pending.

44. "**Distribution(s)**" shall mean the issuance of payment(s) to the holders of Allowed Claims and Allowed Administrative Claims as required by this Plan. Payment shall be effectuated by placing a check in the U.S. Mail to the address indicated in the Debtors' schedules, on the Creditor's proof of claim, or by any other means or method as requested by the Creditor in writing.

45. "**Distribution Agent**" shall mean the Debtors or ASBPA, as may be hereafter determined and set forth in the Confirmation Order, who will be responsible for making Distributions according to this Plan.

46. "**Effective Date**" shall mean the date on which the Distributions are scheduled to be issued pursuant to the Confirmed Plan. The Effective Date shall be a business day between the first business day that the Confirmation Order becomes final and ten business days thereafter.

47. "**Effective Date Distributions**" shall mean the Distributions that are made on the Effective Date, which shall derive from the Transaction.

48. "**Equity Owner**" shall mean Little Haiti Development Partners, LP, the owner of the Debtors.

49. "**Fee Application**" shall mean an application under Sections 330(a), 331, and/or 503 of the Bankruptcy Code for allowance of any Professional Fees.

8

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

50. "**Final Order**" shall mean an order or judgment of the Court which has been entered on the docket maintained by the clerk of such Court and which has not been reversed, vacated or stayed, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reconsideration or rehearing has expired and no such appeal, petition for certiorari, or other proceedings for a new trial, reconsideration or rehearing is then pending, or (b) if an appeal, writ of certiorari, new trial, reconsideration or rehearing has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, reconsideration or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reconsideration or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

51. "**Final Report**" shall mean the Final Report on Distribution and Request for Entry of Final Decree Closing Case to be filed by the Debtors.

52. "**G Shores**" shall mean collectively G Shores Holdings LLC (32.94%), JMG Holdings, LLC (20.59%), MCCV Holdings LLC (20.59%) and The Rock-Miami Church Inc. (25.88%), the mortgage holder on the Debtor 6229 Property owned by Debtor 6229 NE 2ND Avenue, LLC.

53. "**G Shores Foreclosure Judgment**" shall mean the Final Judgment of Foreclosure obtained by G Shores against Debtor 6229 NE 2nd Avenue, LLC on April 27, 2022 in Miami-Dade County Circuit Court case number 2021-015215-CA-01 and the order entered thereafter in the foreclosure case awarding attorney fees.

54. "**General Unsecured Creditor**" shall mean a Creditor holding an allowed non-priority Unsecured Claim or a Claim against the estate of the Debtor other than an Administrative Claim, a Secured Claim or a Priority Claim.

55. "**Impaired Creditors**" shall mean all Classes of Claims or Interests that are Impaired under the Plan.

56. "**Impairment**" of Claims or Interests shall mean that a Class of Claims or Interests is impaired under the Plan. A Class is impaired ("**Impaired**") if the Plan alters the legal, equitable and/or contractual rights to which a holder of such Claim or Interest is entitled.  A Class of Claims or Interests is unimpaired if the Plan, with respect to such Class, leaves unaltered the legal, equitable and contractual rights to which a holder of such Claim or Interest is entitled.  In this Plan, a Class is not Impaired if it is to be paid in full on the Effective Date. If there is any chance that a Class will not be paid in full on the Effective Date, then the Class is deemed Impaired for voting purposes.

57. "**Interested Parties**" shall mean, collectively, the Debtors, the Creditors, the Equity Owner, LOZ, and any other person or entity who has a legal or equitable "**Interest**" in the Chapter 11 Cases.

58. "**LHDP**" shall refer to Little Haiti Development Partners, LP, which is the owner of all of the Debtors.

9

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

59. *"**Lien**"* shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

60. **"LHDM"** shall refer to Little Haiti Development Management, LLC, the manager of all the Debtors.

61. "**LH Gateway**" shall refer to Little Haiti Gateway Holdings LLC, the transferee of Chemtov's judgment and assignee of Chemtov's claims in these Cases.

62. **"Local Rules"** shall mean the local rules of procedure of the United States Bankruptcy Court for the Southern District of Florida.

63. "**LOZ**" shall refer to LH OP Zone Investors, LLC, the purchaser of the Debtor Properties pursuant to the Purchase Transaction.

64. **"LOZ Closing"** shall mean the closing of the Court-approved Purchase Transaction with LOZ.

65. "**Notice Parties**" shall mean all parties entitled to notice of filings or other matters as set forth in the Plan, which includes all Classes, the United States Trustee, the Debtor and Debtors' Counsel, excluding in any particular circumstance the party that itself filed the matter required to be served.

66. "**Perdomo**" shall mean Alexis Perdomo (4.44%) JMG Holdings, LLC (22.22%) MCCV Holdings LLC (22.22%); MIG Financial Group, LLC (25.19%); Reef Inspired LLC (11.11%); and The Maria L. Santaya Living Trust (14.82%), the first mortgage holder on the Debtor 5823 Properties, 5823 NE 2nd Avenue, Miami, Florida and 175 NE 59th Street, Miami, Florida.

67. "**Perdomo Judgment**" shall mean the Summary Final Judgment of Foreclosure obtained by Perdomo against Debtor 5823 NE 2nd Avenue, LLC on March 23, 2022 in Miami-Dade County Circuit Court case number 2021-015376-CA-01.

68. *"**Petition Date**"* shall mean, with respect to all Debtors except 6229 NE 2nd Avenue, LLC and 5823 NE 2nd Avenue, LLC, January 18, 2022, the date on which the Debtors commenced their Chapter 11 Cases. With respect to 6229 NE 2nd Avenue, LLC, "**Petition Date**" shall mean May 31, 2022, the date on which its Chapter 11 Case was commenced. With respect to 5823 NE 2nd Avenue, LLC, "**Petition Date**" shall mean June 20, 2022, the date on which its Chapter 11 Case was commenced.

69. *"**Plan**"* or "**Plan of Reorganization**"* shall mean the Third Amended Plan of Reorganization filed by the Debtors on July 1, 2022 [ECF 163], as the same may be further amended, supplemented or modified from time to time.

70. *"**Plan Distributions**"* shall mean all the Distributions to be made as set forth in this Plan.

71. *"**Priority Claim**"* shall mean any Claim, if Allowed, entitled to priority pursuant to Section 507(a) of the Code, other than an Administrative Claim.

72. **"Priority Creditor"** shall mean a Creditor holding an Allowed Priority Claim.

10

Aaronson Schantz Beiley P.A. | 2 S. Biscayne Boulevard, Suite 3450 | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

73. *"**Professional Fees***" shall mean all fees and costs approved by the Court under Section 330(a), 331 or 503 of the Code.

74. **"Purchaser"** shall mean LH OP Zone Investors, LLC, the purchaser of the Debtor Properties pursuant to the Purchase Transaction.

75. "**Purchase Agreement**" shall mean the Purchase and Sale Agreement between the Debtors and LOZ for the sale by Debtors and the purchase by LOZ of all the Debtor Properties.

76. "**Purchase Transaction**" or **"Transaction"** shall refer to the transaction with LH OP Zone Investors LLC ("LOZ"), wherein LOZ shall purchase the Debtor Properties for cash consideration greater than the amounts necessary to fund this Plan, free and clear of all liens, claims, encumbrances and interests (subject only to encumbrances, easements and restrictions of record and taxes accruing subsequently to 2021).

77. *"**Reorganized Debtors***" shall mean the Debtors after entry of the Confirmation Order and upon and after the Effective Date.

78. *"**Schedules***" shall mean, inclusively, the Schedules of assets and liabilities and the Statements of Financial Affairs, as they have been or may be amended from time to time, filed by the Debtors in the Chapter 11 Case pursuant to Section 521 of the Code and the Bankruptcy Rules.

79. *"**Secured Claim***" shall mean a Claim secured in whole or part by a Lien on assets of the Debtors.

80. **"Secured Creditor"** shall mean a Creditor holding an Allowed Secured Claim.

81. "**Substantial Consummation**" shall have the same meaning as defined in Section 1101 of the Bankruptcy Code and will occur on the Effective Date. But for the 6229 Case and the 5823 Case, this case shall be deemed substantially consummated upon making the Effective Date Distributions to Creditors. The 6229 Case and the 5823 Case shall be deemed substantially consummated only upon payment to all Allowed Creditors of Debtor 6229 and Debtor 5823 other than G Shores and Perdomo, who will each be paid at the time of LOZ Closing.

82. *"**United States Trustee Fees***" shall mean the fees payable to the United States Trustee's office in conjunction with this Chapter 11 Case.

83. "**Unliquidated Claim(s)**" shall mean all Claims scheduled as such by the Debtor and any proof of claim filed by a Creditor without a specific dollar amount identified therein.

84. *"**Unsecured Claim***" means any Claim that arose or accrued prior to the Petition Date that is not an Administrative Claim, a Secured Claim or a Priority Claim, and including, without limitation, Claims arising from the rejection of an unexpired lease or executory contract pursuant to this Plan, Deficiency Claims, or other Claims so designated by Final Order of the Bankruptcy Court.

85. **"Unsecured Creditor"** shall mean a Creditor holding an Allowed Unsecured Claim.

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

86. **Undefined Terms**. A term used but not defined herein shall have the meaning given to it by the Bankruptcy Code or the Bankruptcy Rules, if defined therein.

## ARTICLE III:   DISCLOSURE STATEMENT & VOTING

The Debtors have prepared and are disseminating this Disclosure Statement to holders of Claims against them for the purpose of soliciting acceptance of the Plan of Reorganization. The Debtors believe that this Disclosure Statement contains information that is material, important and necessary for their Creditors to arrive at an informed decision in exercising their right to vote for the Plan, to the extent that any Creditors of the Debtors are Impaired by the Plan. Creditors that are not Impaired by the Plan will not vote on the Plan.  The Third Amended Plan of Reorganization was filed by the Debtors on July 1, 2022 [ECF 163].

For a Class of Claims to accept the Plan, acceptances must be filed by at least 2/3 in amount and more than 1/2 in number of the Allowed Claims for such Class that actually vote on the Plan. A failure to vote on the Plan does not constitute either an acceptance or rejection of the Plan.  The Debtors' Plan, if confirmed, will pay all Allowed Claims of all Creditors in full, with interest, and therefore there will be no Impaired Creditors and no voting on the Plan will be required.  The Distribution funds shall be derived by the Debtors from the Purchase Transaction.  Debtors propose that all payments to Creditors shall be made in a single payment on the Effective Date.

**NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN REVIEWED OR PASSED UPON BY AN ACCOUNTANT.  THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY ALTHOUGH ALL SUCH INFORMATION IS ACCURATE TO THE DEBTORS' BEST KNOWLEDGE, INFORMATION AND BELIEF.  THE COURT HAS NOT VERIFIED THE ACCURACY OF THE INFORMATION CONTAINED HEREIN, AND THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY THAT THE COURT ENDORSES OR APPROVES THE PLAN, BUT ONLY THAT IF THE INFORMATION IS ACCURATE, IT IS SUFFICIENT TO PROVIDE AN ADEQUATE BASIS FOR CREDITORS AND INTEREST HOLDERS TO MAKE INFORMED DECISIONS WHETHER TO APPROVE OR REJECT THE PLAN.**

Most words or phrases used in this Disclosure Statement shall have their usual and customary meanings. The words or phrases when used in the context of the Plan and Disclosure Statement with initial capital letters shall have definitions set forth in the Plan and which are repeated herein. Unless otherwise defined, the terms used in this Disclosure Statement shall have the same meaning as in the Bankruptcy Code or Rules.

Pursuant to the Bankruptcy Code, only holders of Allowed Claims or equity interests in Classes of Claims or Interests that are Impaired under the Plan and that will receive Distributions under the Plan are entitled to vote to accept or reject the Plan. Under applicable bankruptcy law, any proof of claim filed by an alleged Creditor is presumed to be an Allowed Claim until such time

as the Debtors (or another party in interest) object to such a Claim. In the event of an objection to a filed Claim, a claimant shall not have the right to vote to accept or reject the Plan until the Contested Claim or Interest is resolved, unless the holder of such Contested Claim or Interest requests and obtains an order from the Court pursuant to applicable Bankruptcy Rules temporarily allowing such Contested Claim or Interest for voting purposes. Any Ballot received from any such holder of a Contested Claim or interest shall not be considered in determining whether the Plan has been accepted by a particular Impaired Class of Claims or Interests unless an order has been entered by the Court allowing the Contested Claim or Interest for voting purposes.  In this regard, the burden is on the claimant to have an objected-to Claim temporarily allowed and the Debtors strongly recommend that parties with Claims subject to an objection seek legal counsel to discuss their eligibility to vote. Classes of Claims or Interests in which the holders of Claims or Interests will not receive or retain any property under the Plan are deemed to have rejected the Plan and are not entitled to vote on the Plan; Classes of Claims or Interests in which the holders of Claims or Interests are Unimpaired under the Plan are deemed to have accepted the Plan and are not entitled to vote on the Plan.  As noted above, the Debtors' Plan provides for the payment of all Allowed Claims of all Creditors in full, with interest.  As a result, there will be no Impaired Creditors and no voting on the Plan will be required.

If all of the applicable requirements of section 1129(a) of the Bankruptcy Code have been satisfied with respect to the Plan, other than the provision requiring the affirmative vote of each impaired class, the Debtors have reserved the right to seek confirmation of the Plan over the objection of one or more Classes of Creditors pursuant to section 1129(b) of the Bankruptcy Code should the Court deem any particular Class impaired. In proceeding under section 1129(b) of the Code, the Court is required to make certain determinations including that the proposed treatment is fair and equitable under the circumstances.  For purposes of seeking confirmation of the Plan under section 1129(b), the Debtors reserve the right to modify or vary the terms of the Plan or the treatment of the Claims or interests of those Classes at or prior to Confirmation Hearing.

## ARTICLE IV:   BACKGROUND INFORMATION

Debtors are Florida[1] limited liability companies which together own 17 parcels of real property in the Little Haiti/Upper East Side neighborhood largely on the Northeast 2nd Avenue corridor of Miami ("Debtor Properties").  Each of the Debtors owns at least one Property that currently or historically generated income, but prior to the filing of the Chapter 11 Cases, several of the properties had ceased generating income, largely as a result of two factors: (i) the Covid-19 pandemic, which caused the failure of several small business tenants that had leased space in several of the Debtor Properties; and (ii) after certain Debtor Properties were gutted in anticipation of renovation, the failure of an investor (the principal of LH Gateway, the entity which recently acquired the Chemtov foreclosure judgment and claims in these cases) to raise and invest sufficient funds to pay existing debt and to complete the renovations, as had been promised.

LHDP is the owner of all the Debtors. LHDP, in turn, is indirectly owned in part and controlled by a family trust which was settled in 2016. The trust was settled by, and is controlled by, Mallory Kauderer and his wife, as joint tenants by the entirety and they are partial beneficiaries

---

[1]	One of the Debtors, 5901 NE 2nd Avenue, LLC ("5901"), is a Delaware limited liability company which is authorized to do business in Florida as a foreign limited liability company.

13

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

of the family trust as husband and wife and as joint tenants by the entirety. LHDM, the manager of all the Debtors, has no ownership interest in the Debtors, and is managed by Mallory Kauderer. Historically, the Debtors were formed separately for tax purposes to facilitate the eventual sale/disposition of Properties, and to maintain independent entities in the event of outside investment.

The Debtors have many of the same unsecured creditors and all Little Haiti Debtors shared liability to the same Secured Creditor – Chemtov, a private mortgage lender, which held a first mortgage on each of the Little Haiti Debtor Properties. The Chemtov obligation derived from a July 31, 2018, business loan agreement and promissory note for $8,000,000.00 (the "Chemtov Loan"), which was collateralized by, *inter alia*, by the Little Haiti Debtor Properties, and was guaranteed by Kauderer.

The Debtors' loss of rental income which directly and indirectly resulted from the two events described above caused the Debtors to default on their obligation to Chemtov in or about November 2020. At the time of default, the outstanding principal balance owed was approximately $6,000,000.00. Chemtov filed a Verified Complaint for Foreclosure of the Debtor Properties on March 16, 2021, in Miami-Dade County Circuit Court, Case No. 2021-006347-CA-01. A Final Judgment of Foreclosure was entered on October 21, 2021 against all Debtors, Mr. Kauderer and LHDP for $7,492,009.67. The Debtors' efforts to restructure the loan with Chemtov prior to the bankruptcy filings were unsuccessful. A foreclosure sale scheduled for January 19, 2022 was stayed by the filing of the Chapter 11 Cases. The Chemtov judgment is overwhelmingly the largest debt in the case. On March 18, 2022, Chemtov filed Proofs of Claim for $7,950,242.55 in each of the Debtors' Cases, which reflected the Final Judgment amount plus accrued default rate interest of 25% to the Petition Date and no interest thereafter. Chemtov subsequently sold its judgment and assigned its Claims against the Little Haiti Debtors to LH Gateway.

Debtor 6229 has liability to a different Secured Creditor, G Shores, which is comprised of four private mortgage lenders that collectively hold a first mortgage on Debtor 6229 Property. The G Shores obligation derives from a March 4, 2019 business loan reflected by a promissory note for $850,000.00 (the "G Shores Loan"), which was collateralized by, *inter alia*, by Debtor 6229 Property, and was guaranteed by Mr. Kauderer.

Debtor 6229 also suffered a loss of rental income directly and indirectly resulting from the two events described above and caused Debtor 6229 to default on its obligation to G Shores in or about February 2021. At the time of default, the outstanding principal balance owed was approximately $850,000.00. G Shores filed a Verified Complaint for Foreclosure of Debtor Property 6229 on June 27, 2021, in Miami-Dade County Circuit Court, Case No. 2021-015215-CA-01. An Agreed Order Enforcing Assignment of Rents was entered by the state court on October 6, 2021, and since November 2021, the rental income from the tenant at the Debtor 6229 Property has been sent by Debtor 6229 each month to G Shores' loan servicer. A Final Judgment of Foreclosure was entered on April 27, 2022 against Debtor 6229, Mr. Kauderer and others. The balance owed pursuant to the judgment is $1,061,867.11. Debtor 6229's efforts to restructure the loan with G Shores prior to the bankruptcy filing were unsuccessful. A foreclosure sale scheduled for June 1, 2022 was stayed by Debtor 6229's Chapter 11 filing.

A second mortgage against Debtor Property 6229 for $600,000.00 is held by Carlton Fields, P.A. to secure a promissory note issued by Debtor 6229 and Mr. Kauderer for legal fees incurred

14

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

in connection with litigation against affiliates of Debtor 6229 and Mr. Kauderer. An adverse judgment was entered in that case against Debtor 6229's affiliates and Mr. Kauderer. The affiliates and Mr. Kauderer assert that Carlton Fields provided grossly inadequate representation. The affiliates and Mr. Kauderer have appealed the adverse judgment and have asserted a separate malpractice claim against Carlton Fields. Both were pending on the Petition Date.

Further with regard to Carlton Fields' mortgage, it contains a (prelitigation) negotiated provision providing for the release of the mortgage and the outstanding amount of principal and interest under the note and mortgage in the event of a sale of Debtor Property 6229 to the extent that the net proceeds are insufficient to satisfy the mortgage.

Debtor 5823 has liability to a different Secured Creditor, Perdomo, which is comprised of six private mortgage lenders that collectively hold a first mortgage on Debtor 5823 Property. The Perdomo obligation derives from an April 22, 2019 business loan reflected by a promissory note for $675,000.00 (the "Perdomo Loan"), which was collateralized by, *inter alia*, by Debtor 5823 Property, and was guaranteed by Mr. Kauderer.

Debtor 5823 suffered a similar loss of rental income directly and indirectly resulting from the two events described above, which caused Debtor 5823 to default on its obligation to Perdomo in or about February 2021. At the time of default, the outstanding principal balance owed was approximately $675,000.00. Perdomo filed a Verified Complaint for Foreclosure of Debtor Property 5823 on June 28, 2021, in Miami-Dade County Circuit Court, Case No. 2021-015376-CA-01. A Summary Final Judgment of Foreclosure was entered on March 23, 2022 against Debtor 5823, Mr. Kauderer and others. The balance owed pursuant to the judgment is $844,938.18. Debtor 5823's efforts to restructure the loan with Perdomo prior to the bankruptcy filing were unsuccessful. A foreclosure sale scheduled for June 21, 2022 was stayed by Debtor 5823's Chapter 11 filing.

## ARTICLE V:  SUMMARY OF DEBTS AND THE CHAPTER 11 CASE

Summary of Pre-Petition Debts.  In addition to the Debtors' collective obligations to Secured Creditors Chemtov (now LH Gateway), G Shores and Perdomo, the Debtors' other combined debts include: (i) Allowed Administrative Expenses of approximately $250,000.00 to ASBPA and approximately $5,000.00 to be paid to the Office of the United States Trustee; (ii) approximately $400,000.00 of other Allowed Secured Claims (not including the Carlton Fields Class 8 Claim discussed below), most of which are tax certificates or tax deed applications for prior year property taxes; (iii) approximately $20,000.00 in Allowed Priority Claims, most of which are sales and use taxes; and (iv) approximately $400,000.00 in Allowed Unsecured Claims.

According to appraisals obtained by the Debtors in December 2021, the estimated combined value of all the Debtor Properties at that time was $6,585,000.00. However, because the Debtor Properties may be in the path of redevelopment, and notwithstanding the limited lease income derived from these properties, the sale of the Debtor Properties in the Purchase Transaction will result in sufficient proceeds to pay all Allowed Claims in full and with interest, where required.

The Chapter 11 Cases. The Little Haiti Debtors' Chapter 11 Cases were filed on January 18, 2022, prior to Chemtov's scheduled foreclosure sale. An Order granting joint administration of the Little Haiti Debtors was entered by the Bankruptcy Court on January 20, 2022 [ECF 5 in Case No.: 22-10385-RAM]. As noted above, prior to the filing of the Chapter 11 Cases, the Debtors

15

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

had fallen behind on payments to Chemtov after several of the properties had ceased generating income due to tenant business failures resulting from the COVID-19 pandemic and the failure of an investor, the principal of LH Gateway, to raise and invest sufficient funds to complete renovations that had begun on certain properties, as had been promised.

Early in these Chapter 11 Cases, the Debtors entered into a cash collateral arrangement with Chemtov which permitted them to maintain and manage the Debtor Properties and pay utilities and insurances. However, because of the high cost of premiums for windstorm coverage for the Debtor Properties, the Debtors did not have sufficient remaining income each month to make adequate protection payments to Chemtov. Therefore, the Debtors offered Chemtov the choice of receiving monthly adequate protection payments from the Debtors or having the Debtor Properties covered by windstorm insurance. Chemtov chose to have the Debtor Properties insured with windstorm coverage, which thereafter was obtained by the Debtors.

Debtor 6229's Chapter 11 Case was filed on May 31, 2022, prior to G Shore's scheduled foreclosure sale. As noted, prior to the filing of its Chapter 11 Case, Debtor 6229 had fallen behind on payments to G Shores after its property had ceased generating income due to tenant income loss resulting from the COVID-19 pandemic and the failure of an investor, the principal of LH Gateway, to raise and invest sufficient funds to complete certain renovations, as had been promised, as had been promised. An Order granting joint administration of Debtor 6229 with the other Debtors was entered by the Bankruptcy Court on June 3, 2022 [ECF 10 in Case No. 22-14331-RAM].

In the Debtor 6229 case, as noted above there is an existing state court rent order providing that the lease payments received from the Debtor 6229 Property should be directed to G Shores. G Shores has collected rent from Debtor 6229 Property since November 2021 in the approximate amount of $900 per month. Because jointly administered Debtor 6229 has been included in Debtors' Third Amended Plan, and because G Shores already is receiving rents from the Debtor 6229 Property pursuant to the state court rent order, Debtor 6229 does not anticipate the need to enter into a cash collateral arrangement with G Shores prior to Plan confirmation and will permit the rent order to remain in place.

Debtor 5823's Chapter 11 Case was filed on June 20, 2022, prior to Perdomo's scheduled foreclosure sale. As noted, prior to the filing of its Chapter 11 Case, Debtor 5823 had fallen behind on payments to Perdomo after its property had ceased generating income due to tenant income loss resulting from the COVID-19 pandemic and the failure of an investor, the principal of LH Gateway, to raise and invest sufficient funds to complete certain renovations, as had been promised. An Order granting joint administration of Debtor 5823 with the other Debtors was entered by the Bankruptcy Court on June 21, 2022 [ECF 6 in Case No. 22-14767-RAM].

The Plan. The Plan provides for payment in full to Class 1, LH Gateway, pursuant to the terms of the foreclosure judgment assigned to it by Chemtov and with interest as provided in that judgment, in full and complete discharge and resolution of its Allowed Claims against the Little Haiti Debtors assigned to it by Chemtov. With accrued interest as set forth in the Chemtov foreclosure judgment, LH Gateway's claim as of the date of the Confirmation Hearing is estimated to be $8,856,991.33. Additional per diem interest through the Effective Date will be calculated and paid on that date. Upon payment to LH Gateway on the Effective Date, , its entire Claim will be fully discharged; it will not have a residual or separate deficiency claim; it will not have a residual or separate unsecured claim; and as a result of the full satisfaction of the debt, it will not have a

16

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

residual or third-party guarantee claim.  Because LH Gateway, Class 1, will be paid in full with interest, Class 1 is Unimpaired and deemed to have accepted this Plan.

The Plan also provides for a payment to Class 7, G. Shores, of $1,061,867.11, the full amount of the G Shores Judgment plus attorney fees as separately awarded by the state court, plus interest to the Effective Date at the per diem interest rate established in the G Shores Judgment, in full and complete discharge and resolution of its Allowed Claim.  Upon payment, its entire Claim will be fully satisfied and discharged. It will not have a residual or separate deficiency claim; it will not have a residual or separate unsecured claim; and because it will be fully satisfied and discharged, it will no longer retain a third-party guarantee claim.  Because G Shores, Class 7, will be paid in full with interest, Class 7 is Unimpaired and deemed to have accepted this Plan.

The Plan also provides for a contingent payment to Class 8, Carlton Fields.  Carlton Fields was granted a second mortgage on Debtor 6229 Property for legal fees in connection with certain state litigation not involving the Debtors. The Carlton Fields Class 8 Claim is disputed.  The Debtors believe that Carlton Fields provided grossly inadequate legal services to the non-Debtors resulting in an adverse judgment, which was appealed pre-petition, and which resulted pre-petition in a malpractice action being filed against Carlton Fields by non-Debtors.

The Carlton Fields mortgage has a provision providing for the release of the mortgage and the outstanding amount of principal and interest in the event of a sale of Debtor 6229 Property to the extent that the net proceeds are insufficient to satisfy the mortgage.  In the event that the sale price is deemed to exceed the first mortgage on the Debtor 6229 Property, the net proceeds will be paid to Class 8 only upon the final resolution of both: (i) the pending appeal in the Third District Court of Appeal, in Case no. 3D21-0826 (the "Appeal") if the appeal is successful; and (ii) the pending legal malpractice case against Carlton Fields in Miami-Dade County Circuit Court, case no. 2022-000785, if it is determined that Carlton Fields was not professionally negligent.  To the extent that the Class 8 Claim is determined to have value upon the sale of the Debtor 6229 Property pursuant to this Plan, and it is Allowed pursuant to the outcome of the Appeal and the legal malpractice case, Class 8 will be paid the allowed amount of its claim in full at that time. Class 8 will not be paid on the Effective Date.

The Plan also provides for a payment to Class 9, G. Shores, of $844,938.18, the full amount of the Perdomo Judgment, plus interest to the Effective Date at the per diem interest rate established in the Perdomo Judgment, in full and complete discharge and resolution of its Allowed Claim. Upon payment, its entire Claim will be fully satisfied and discharged. It will not have a residual or separate deficiency claim; it will not have a residual or separate unsecured claim; and because it will be fully satisfied and discharged, it will no longer retain a third-party guarantee claim.

The Plan further provides for the payment in full of all Allowed Secured Claims for real estate taxes, including the claims of Tax Certificate Holders, as well as all Allowed Priority Claims (arising primarily from Sales and Use Taxes) and all Allowed Unsecured Claims, including federal judgment rate interest on those claims from the Petition Date.  As noted above, Carlton Fields will receive no payments under the Plan on the Effective Date in connection with its contingent Secured Claim and will be paid only if there are sale proceeds of Debtor Property 6229 in excess of the first mortgage and outstanding property taxes, and either the pending appeal in Case no. 3D21-0826 (the "Appeal") is determined in favor of the judgment debtors or (ii) the pending legal malpractice case

17

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

against Carlton Fields in Miami-Dade County Circuit Court, Case no. 2022-000785, is resolved in favor of Carlton Fields.

The Priority Claims of the Debtors total approximately $20,000.00 and are comprised primarily of unpaid sales taxes owed to the Florida Department of Revenue, and unpaid business taxes owed to the Miami-Dade County Tax Collector.

The combined Unsecured Claims of the Debtors total approximately $400,000.00, and all Allowed Unsecured Claims will be paid in full, with interest, on the Petition Date. The Unsecured Claims are comprised primarily of unpaid legal fees, 1099 wages to Mr. Kauderer's assistant who helps manage, and other workers who help maintain, the Debtor Properties, vendors that have provided services to the Debtor Properties, and various fees owed to the City of Miami.

The Plan provides for full payment (with interest) of all debt (except disputed, contingent and unliquidated Class 8) of all Debtors on the Effective Date as follows. The Plan is deemed substantially consummated upon the Effective Date payment of all the Debtors' estimated debts as follows:

| Anticipated Chapter 11 Debt | |
|---|---:|
| | |
| Administrative - ASBPA | 250,000.00 |
| Administrative - U.S. Trustee | 55,000.00 |
| LH Gateway | 8,856,991.33 |
| G Shores | 1,061,867.11 |
| Perdomo | 844,938.18 |
| Other Secured Creditors | 400,000.00 |
| Priority Claims | 20,000.00 |
| Unsecured Claims | 400,000.00 |
| **Total** | **11, 888,796.62** |

## ARTICLE VI:  PLAN IMPLEMENTATION

All Allowed Creditors with Allowed Claims, and all Allowed Administrative Expenses, will be paid in full, with accrued per diem interest through the Effective Date, from the proceeds of the Purchase Transaction. Class 8, which is disputed, will be paid, if at all, as set forth above. The consideration involved in the Purchase Transaction shall be adjusted up or down so as to cover 100% of the allowed creditors in this case. The purchase price involved in the transaction shall be allocated as follows:

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

| Debtor | Agreed Purchase Price | |
|---|---|---|
| 6200 NE 2ND AVENUE | 3,928,796.62 | **The purchase price of this property will be adjusted to conform to the funds needed to substantially consummate the Plan.** |
| 5911 NE 2ND AVENUE | 995,000.00 | |
| 5901 NE 2ND AVENUE | 995,000.00 | |
| 5900 NE 2ND AVENUE | 995,000.00 | |
| 5700 NE 2ND AVENUE | 995,000.00 | |
| 5524 NE 2ND AVENUE | 995,000.00 | |
| 175 NE 55TH STREET | 995,000.00 | |
| 6229 NE 2ND AVENUE | 995,000.00 | |
| 5823 NE 2ND AVENUE | 995,000.00 | |
| | | |
| **TOTAL** | **11, 888,796.62** | |

Pursuant to the Purchase Transaction and 11 U.S.C.§ 1123(b)(4), the Debtors will sell all the Debtors' Properties to LH OP Zone Investors, LLC ("LOZ") as follows and the proceeds of the sale will be allocated and distributed to Allowed Creditors under the Plan on the Effective Date. Pursuant to the Purchase Transaction, the proceeds will equal or exceed the amount of funds necessary to fund all distributions required by th Plan to all Allowed Creditors (except Class 8 as described herein).  The table above represents the amounts of the Claims that will be satisfied by the Purchase Transaction.

Pursuant to the Purchase Transaction, the proceeds will equal or exceed the amount of funds necessary to fund all distributions required by this Plan to all Allowed Creditors. The sale price may be adjusted in order to satisfy the total Allowed Claims in this Case. To the extent that the total purchase price, based on the Purchase Transaction Closing statement, is adjusted upward or downward, the difference in amounts will be absorbed in the 6200 NE 2ND Avenue, LLC case. The Plan is deemed substantially consummated upon the payment of all the Little Haiti Debtors' debts.

Fifty percent (50%) of the Purchaser is owned by a group of third-party investors none of whom have any relationship to any of the Debtors or any of the Debtors' owners, directly or indirectly. The other fifty percent (50%) of the Purchaser is owned by Miami Investments IV, LLC, ("MI IV") a Delaware limited liability company.  About 80% of MI IV is owned by the same family trust which is a part owner of LHDP. The family trust was settled in 2016 by Mallory Kauderer and his wife, is controlled by Mallory Kauderer and his wife as joint tenants by the entirety and is substantially for the benefit of Mallory Kauderer and his wife as joint tenants by the entirety.

The Purchase Transaction will be in accord with 11 U.S.C.§ 363(f) and the Debtor Properties will be sold free and clear of all liens, claims, encumbrances and interests (but subject to

encumbrances, easements and restrictions of record and taxes accruing subsequent to 2021), with all liens, claims, encumbrances and interests to attach to proceeds. Pursuant to the terms of the Purchase Transaction, the proceeds will equal or exceed the amount of funds necessary to fund and substantially consummate this Plan.

Further, the Purchase Transaction authorized under this Plan shall be pursuant to 11 U.S.C. § 1146 which provides that the transfer of the Debtor Properties will not be taxed under any law imposing a stamp tax or similar recording tax.

## ARTICLE VII:  CLASS TREATMENT

The Plan itself should be referred to for its specific content. The treatment of Creditors is repeated herein for ease of reference, but the complete Plan will provide the definitive statement for Creditors.

On the Effective Date, the Plan provides for: (1) payment of all administrative debt; (2) payment of $8,856,991.33 to LH Gateway, with interest as provided in the Chemtov Foreclosure Judgment, in full satisfaction and discharge LH Gateway's Allowed Secured Claim; (3) payment to G Shores of $1,061,867.11, plus interest as provided in the G Shores Foreclosure Judgment and subsequently awarded attorney fees, in full satisfaction and discharge of G Shore's Allowed Secured Claim; (4) payment to Perdomo of $844,938.18, plus interest as provided in the Perdomo Foreclosure Judgment, in full satisfaction and discharge of Perdomo's Allowed Secured Claim; (5) payment in full of all Allowed Secured Claims of Miami-Dade County Tax Collector and Tax Certificate Holders for real estate taxes owed on the Little Haiti Debtor Properties; (6) payment in full of all Allowed Priority Claims of the Little Haiti Debtors; and (7) payment in full of Allowed General Unsecured Claims of the Little Haiti Debtors. Interest on all Claim amounts will be calculated to the Effective Date. All Allowed Claims against Debtors 6229 and 5823 other than G Shores and Perdomo will be paid in full on a date to be established in the Confirmation Order or other Order of the Court after the Claims Bar Date and Claims Objection Date established for creditors of Debtor 6229 and Debtor 5823 have passed.

The following is the treatment of all Classes in the Plan:

| Classification | Claim Amount | Treatment |
|---|---|---|
| Class 1: Allowed Secured Claims of LH Gateway | With interest, approximately $8,856,991.33 | Class 1 has a first lien (subject to tax liens and tax certificates) on the Little Haiti Debtor Properties. Class 1 will receive full payment pursuant to the terms of its foreclosure judgment assigned to it by Chemtov, with interest as provided in that judgment to the Effective Date. This payment to LH Gateway will be in complete discharge and satisfaction of its Class 1 Claim. Upon payment, its entire Claim will be fully satisfied and discharged. It will not have a residual or separate deficiency claim; it will not have a residual or separate |

20

Aaronson Schantz Beiley P.A. | 2 S. Biscayne Boulevard, Suite 3450 | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

| | | |
|---|---|---|
| | | unsecured claim; and because it will be fully satisfied and discharged, it will no longer retain a third-party guarantee claim. Further, because this Class will be paid in full with interest, Class 1 is unimpaired and deemed to have accepted this Plan. |
| <u>Class 2</u>:<br>Allowed Secured Claims of Tax Certificate Holders and Claims for Real Estate Taxes | Approximately $400,000.00 | Allowed Claims of Class 2 shall be paid in full, with all accumulated interest, on the Effective Date. Further, because this Class will be paid in full with interest, Class 2 is unimpaired and deemed to have accepted this Plan. |
| <u>Class 3</u>:<br>Allowed Priority Claims | Approximately $20,000.00 | Allowed Claims of Class 3 (other than Class 3 Claims of Debtors 6229 and 5823) shall be paid in full on the Effective Date. Class 3 Allowed Claims of Debtors 6229 and 5823 will be paid in full, with federal judgment rate interest from the Petition Date, by a date set by the Court after the Claims Bar Date (6229 & 5823) and Claims Objection Date have passed and all Claims of Debtors 6229 and 5823 have been resolved. Further, because this Class will be paid in full with interest, Class 3 is unimpaired and deemed to have accepted this Plan. |
| <u>Class 4</u>:<br>Internal Revenue Service | Debtors are unaware of any federal tax claims. | The Debtors are "disregarded entities" under the tax code, and federal taxes are the responsibility of Debtors' parent. |
| <u>Class 5</u>:<br>Allowed Unsecured Claims | Approximately $400,000.00 | Allowed Claims of Class 5 (other than Class 5 Claims of Debtors 6229 and 5823) shall be paid in full (including federal judgment rate interest from the Petition Date) on the Effective Date. Class 5 Allowed Claims of Debtors 6229 and 5823 will be paid in full, with federal judgment rate interest from the Petition Date, by a date set by the Court after the Claims Bar Date (6229 & 5823) and Claims Objection Date have passed and all Claims of Debtors 6229 and 5823 have been resolved. Further, because this Class will be paid in full with interest, Class 5 is |

21

ᴀᴀʀᴏɴꜱᴏɴ Sᴄʜᴀɴᴛᴢ Bᴇɪʟᴇʏ P.A. | 2 S. Bɪꜱᴄᴀʏɴᴇ Bᴏᴜʟᴇᴠᴀʀᴅ, Sᴜɪᴛᴇ 3450 | Mɪᴀᴍɪ, Fʟᴏʀɪᴅᴀ 33131 | Tᴇʟ 786.594.3000 | Fᴀx 305.424.9336

| | | |
|---|---|---|
| | | unimpaired and deemed to have accepted this Plan. |
| Class 6:<br>Equity | | On the Effective Date, the Equity Interests of the existing Equity Owners will be eliminated. All the Debtor Properties will be sold pursuant to the Purchase Transaction, and the proceeds of sale are devoted to the payment of Allowed Creditors under this Plan. |
| Class 7:<br>Allowed Secured Claim of G Shores | $1,061,867.11, plus interest | Class 7 has a first lien (subject to tax liens and tax certificates) on Debtor 6229 Property.  Class 7 will receive full payment plus interest and attorney fees as provided in the G Shores Foreclosure Judgment and subsequent state court order. Pursuant to a rent Order entered in the foreclosure case, Class 7 has received monthly payments of approximately $900.00 a month for approximately 9 months. These payments, and any other payments received by Class 7 shall be credited to the payment to Class 7. The payment to Class 7 shall be in full and complete resolution of its Class 7 Claim.  Upon payment, its entire Claim will be fully satisfied and discharged. It will not have a residual or separate deficiency claim; it will not have a residual or separate unsecured claim; and because it will be fully satisfied and discharged, it will no longer retain a third-party guarantee claim. Further, because this Class will be paid in full with interest, Class 7 is unimpaired and deemed to have accepted this Plan. |
| Class 8:<br>Secured Claim of Carlton Fields, P.A. | $600,000.00 | In order to secure payment of then owing and future attorney fees by the Debtor's principal Mr. Kauderer, Class 8 was granted a promissory note and second mortgage on the Debtor 6229.  The Class 8 mortgage has a provision providing for the release of the mortgage and the outstanding amount of principal and accrued interest in the event of a sale of the 6229 Property to the extent that the net proceeds are insufficient to satisfy the mortgage.   As well, Mr. Kauderer has filed suit |

22

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

| | | against Class 8 alleging that Carlton Fields committed malpractice in connection with its failed and inadequate representation in a lawsuit filed by Kevter, Inc., which resulted in the entry of judgment against him for in excess of $3.0 million. Mr. Kauderer took an appeal of that judgment. Accordingly, Class 8 will be paid only upon the final resolution of: (i) the pending appeal in the Third District Court of Appeal, in Case no. 3D21-0826 (the "Kevter Appeal") and the underlying judgment is reversed; or (ii) in the pending legal malpractice case against Carlton Fields in Miami-Dade County Circuit Court, Case No. 2022-000785, it is determined that Carlton Fields was not professionally negligent. In either such instance, the amount to be paid will be equal to the proceeds of sale of Debtor 6229 Property in excess of the prior tax liens and the mortgage lien of Class 7 G Shores. Accordingly, subject to the foregoing, Class 8 will be paid at that time whatever amount is due under its documents for actual professional services rendered, if any. To the extent that this treatment is deemed to impair the treatment of Class 8, it will be provided a letter of credit or other collateral satisfactory to Class 8 pending resolution of the conditions set forth above. |
| --- | --- | --- |
| Class 9: Allowed Secured Claims of Perdomo | 844,938.18, plus interest | Class 9 has a first lien (subject to tax liens and tax certificates) on Debtor 5823 Properties. Class 9 will receive full payment plus interest and attorney fees as provided in the Perdomo Judgment, in full and complete resolution of its Class 9 Claim. Upon payment, its entire Claim will be fully satisfied and discharged. It will not have a residual or separate deficiency claim; it will not have a residual or separate unsecured claim; and because it will be fully satisfied and discharged, it will no longer retain a third-party guarantee claim. Further, because this Class will be paid in full with interest, Class 9 is unimpaired and deemed to have accepted this Plan. |

Aaronson Schantz Beiley P.A. | 2 S. Biscayne Boulevard, Suite 3450 | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

## ARTICLE VIII:  EFFECTIVENESS OF THE PLAN

### A. Conditions Precedent

The Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full or waived in accordance with the provisions specified below:

1. Entry of Order Approving the Purchase Transaction. The Court shall have entered an order approving the Purchase Transaction between the Debtors and LH OP Zone Investors, LLC.

2. Entry of Confirmation Order. The Court shall have entered the Confirmation Order confirming and approving the Plan in all respects by the Confirmation Date and the Confirmation Order has become a Final Order.

3. Waiver of Deadlines or Other Conditions.  As contemplated by the definition of Confirmation Date and Effective Date herein, the deadlines set forth above may be extended (if necessary) or as may be necessary to reasonably accommodate the Court's Calendar.

### B. Default Remedies

Under the Plan, the Reorganized Debtors are required to make distributions to Creditors holding Allowed Claims on the Effective Date.  After the Effective Date, the Bankruptcy Cases will be closed.

If the Reorganized Debtors fail to perform as required by this Plan (even if such failure is due to a breach of the Purchase Agreement by LOZ, including failure to fund the Plan), the Reorganized Debtors shall be in default. In the event of an Alleged Default, an affected Creditor shall provide written notice to the Reorganized Debtors and the Reorganized Debtors shall have twenty (20) days thereafter to cure or dispute the Alleged Default. If the Reorganized Debtors fail to cure or dispute the Alleged Default within the twenty (20) day period, it shall be deemed a Default Event and the discharge and the injunctive provisions of this Plan will no longer be applicable to this Creditor, and the Creditor may proceed to enforce its rights under state law, without further order of this Court, including, for example, by setting a foreclosure sale of the Debtor Properties without the need to first obtain a stay relief order from the Court.  If there is a dispute as to whether a Default Event has occurred, such dispute may be resolved by the Court on short notice.

## ARTICLE IX: CLAIMS BAR DATE

### A.  Claims Bar Date

The Claims Bar Date for the Little Haiti Debtors was previously set by the Court as March 29, 2022, and for governmental units, July 18, 2022. The Debtors anticipate asking the Court to set a separate Claims Bar Date for Debtors 6229 and 5823, including both governmental and non-governmental claimants, in the Confirmation Order or other Court Order, along with a separate Claims Objection Date for Debtors 6229 and 5823 to file objections to such timely filed claims.

24

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

## ARTICLE X: THIRD-PARTY RELEASES

**A.   Third Party Releases**

Except for Class 8, which may not be paid under its own documents, all the Little Haiti Debtors' debts will be paid in full. Because all debt will be fully satisfied, the guarantees of Debtors' principal manager, Mallory Kauderer, will no longer be valid and enforceable.

## ARTICLE XI:  ACCEPTANCE OR REJECTION OF THE PLAN

**A. Voting Classes**

Unless otherwise ordered by the Court, no Classes are Impaired under the Plan and therefore no voting to accept or reject the Plan will be required. All Unimpaired Classes are deemed to have accepted the Plan.

Any holder of a Contested Claim or interest whose Claim or interest is objected to by the Debtors or other person qualified to object shall not have the right to vote to accept or reject the Plan until the Contested Claim or interest is resolved unless the holder of such Contested Claim or interest requests an order from the Court pursuant to applicable Bankruptcy Rules temporarily allowing such Contested Claim or interest for voting purposes. Any Ballot received from any such holder of a Contested Claim or interest shall not be considered in determining whether the Plan has been accepted by a particular Impaired Class of Claims or Interests.

**B. Acceptance by Impaired Classes**

An Impaired Class of Claims shall have accepted the Plan if (1) the holders (other than holders designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims voting in such Class vote to accept the Plan, and (2) more than one-half of those voting (other than holders designated under section 1126(e) of the Bankruptcy Code) vote to accept the Plan.

## ARTICLE XII:  CONFIRMATION OF THE PLAN

The Debtor believes that the Plan satisfies all of the requirements for confirmation.

**A. General Confirmation Requirements**

Section 1129(a) of the Bankruptcy Code requires that a plan be proposed in good faith, that there be disclosed certain information regarding payment made or promised to be made to insiders, and that the plan comply with the applicable provisions of chapter 11. The Debtors believe that they have complied with these provisions. Section 1121(a) of the Bankruptcy Code.  also requires that at least one impaired class accept the plan and that confirmation of the plan will likely not be followed by the need for further financial reorganization. As indicated, because all creditors will be paid in full under the Plan (and Chemtov will be paid the Chemtov Settlement), the creditors are not impaired and deemed to have accepted the Plan.

25

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

## B. Best Interest Test

Each holder of a Claim or Interest in an Impaired Class must either: (I) accept the Plan or (ii) receive or retain under the Plan cash or property of a value, as of the Effective Date of the Plan, that is not less than the value that the holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. The Bankruptcy Court will determine whether the Cash paid under the Plan to each Class equals or exceeds the value that would be allocated to the holders in a liquidation under chapter 7 of the Bankruptcy Code (the "Best Interest Test"). The Best Interest Test requires the Bankruptcy Court to find the Plan provides each member of each Impaired Class a recovery having a value at least equal to that which each such Class member would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. As illustrated by the Liquidation Analysis, the Debtors believe that the Plan meets the Best Interests Test. And again, since creditors are being paid in full, the best interests test is *ipso facto,* satisfied.

## C. Classification of Claims and Interests

The Bankruptcy Code requires that a plan of reorganization place each creditor's claim and each equity security holder's interest in a class with other claims and interests that are "substantially similar." The Debtors believe the Plan meets the classification requirements of the Code.

## D. Confirmation Hearing

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on the confirmation of the Plan. The Confirmation Hearing currently is scheduled for July 14, 2022. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing. Any objection to confirmation must be made timely in writing, filed with the Bankruptcy Court and served upon the following parties:

> Geoffrey S. Aaronson, Esq.
> Tamara D. McKeown, Esq.
> One Biscayne Tower, Suite 3450
> 2 S. Biscayne Boulevard
> Miami, Florida 33131
> Tel. 786.594.3000
> Fax 305.424.9336
> gaaronson@aspalaw.com
> tmckeown@aspalaw.com

## E. Financial Feasibility

The Bankruptcy Code requires that, in order to confirm a plan, the Court must find that confirmation of the plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor *("Feasibility Test").* For a plan to meet the Feasibility Test, the Court must find that the Debtors' Estates and the Reorganized Debtors will possess the capital and other resources necessary to meet their respective obligations under the Plan.  The Debtors believe that following confirmation of the Plan, the Reorganized Debtors will be able to perform their obligations under the Plan without the need for further liquidation or financial reorganization. As

26

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

stated in the Summary of the Plan, the Purchase Transaction will provide sufficient income to fund the Plan.

**F. Nonconsensual Confirmation (Cramdown)**

If any impaired Class of Claims votes not to accept or is deemed not to have accepted the Plan, the Plan can be confirmed in accordance with Section 1129(b) of the Code (the so-called "Cramdown" provisions.) In such event, if the plan does not discriminate unfairly, and is fair and equitable, with respect to such class of claims, it may be confirmed.

A plan does not discriminate unfairly and is fair and equitable with respect to a rejecting class if the plan provides (a) that the class will receive on account of such claim property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date (the "**Liquidation Test**"); and (b) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest, any property (the "**Absolute Priority Test**").

There are no Impaired Classes under the Plan. The only Class not being paid in full through the Purchase Transaction is Class 8, which Claim is disputed, contingent and conditional on (a) the sale price of Debtor 6229 Property; (b) the future outcome of the Case No. 2022-000785 in the Third District Court of Appeal; and (c) the future outcome of the malpractice claim against Class 8, Miami-Dade County Circuit Court case no. 2022-000785, all as described in Article V above.

**G. Liquidation Test**

A Chapter 11 Plan requires that that all creditors receive, as of the effective date of the plan, not less than the amount such creditor would receive or retain if the debtor were liquidated under chapter 7 of this title on such date

In this case, in a liquidation, Classes 1, 7 and 9 would be permitted to foreclose subject to tax liens and tax certificates; and it is unlikely that any surplus funds would remain to pay any Priority or Unsecured Creditors. Class 8 likely would receive no surplus payment after a foreclosure on Debtor 6229 Property. Moreover, due to the pending appeal and malpractice litigation, a trustee would likely view the Class 8 claim in the same manner as Debtor 6229 does and await the results of the appeal and the malpractice action before a Claim by Class 8 would be paid.

In addition, the treatment of Class 8 in this case meets the Absolute Priority Test. If Class 8's claim ultimately is allowed, it would be paid in full.

## ARTICLE XIII: BINDING EFFECT OF PLAN

The provisions of the confirmed Plan shall bind the Debtors and all Creditors of the Debtors. Accordingly, upon confirmation, the Debtors shall be bound to make all payments required by the confirmed Plan in a timely fashion, and the Creditors shall be bound to accept all payments required by the Plan. In the event of a default under the Plan, the Creditors may enforce all payment provisions of the confirmed Plan.

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

## ARTICLE XIV: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All executory contracts and unexpired leases shall be assumed. To the best of the knowledge of the Debtors, these contracts and leases are current and remain in effect and shall be paid in accordance with their provisions on a current basis.

## ARTICLE XV: RISKS OF THE PLAN

The Plan is predicated on the closing of the Purchase Transaction that will fund the Plan. Should an unforeseen event cause LOZ, the Purchaser, or the Debtors, to be unable to close the Purchase Transaction, the Debtors would be required to find another purchaser for the Debtor Properties or a similar transaction to fund a Plan or risk the loss of the Debtor Properties to LH Gateway, G Shores and Perdomo in foreclosure sales.

## ARTICLE XVI:  LIQUIDATION ANALYSIS

As indicated above, in liquidation, if there were no confirmed Plan, LH Gateway, G Shores and Perdomo would reschedule their respective foreclosure sales of the Debtor Properties and would foreclose upon the Debtor Properties subject only to unpaid property taxes. In such instance, it is unlikely that a foreclosure sale would result in excess funds that would be available to pay any creditors other than the secured mortgage creditors.

## ARTICLE XVII:  INQUIRIES

Please address all inquiries concerning the Debtor, the Plan, this Disclosure Statement in support of the Plan, and voting to Debtors' Attorneys:

> Geoffrey S. Aaronson, Esq.
> Tamara D. McKeown, Esq.
> One Biscayne Tower, Suite 3450
> 2 S. Biscayne Boulevard
> Miami, Florida 33131
> Tel. 786.594.3000
> Fax 305.424.9336
> gaaronson@aspalaw.com
> tmckeown@aspalaw.com

## ARTICLE XVIII: MISCELLANEOUS

### A.  Third Party Releases

All the Debtors' debts will be paid in full, with interest. Because the three secured mortgage creditors, LH Gateway, G Shores and Perdomo, are being paid in full, with interest pursuant to their respective foreclosure judgments, the guarantees of Debtors' principal manager, Mallory Kauderer, to Chemtov (now LH Gateway), G Shores and Perdomo, will no longer be valid or enforceable. In the case of Carlton Fields, its disputed, contingent and unliquidated claim, if ultimately allowed,

28

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

will be paid in full at that time and will result in no further claim by Carlton Fields against Mr. Kauderer.

### B.  Special Tax Provisions

Under Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under Chapter 11 of the Code, may not be taxed under any law imposing a stamp tax or similar tax. Accordingly, there shall be no Florida documentary stamp taxes on the sale of the Debtor Properties pursuant to the Purchase Transaction, nor shall there be any Florida intangible taxes on the Purchase Transaction.

### C.  Retention of Causes of Action

The Reorganized Debtors specifically retain all pre-petition causes of action they had prior to the Petition Date, including but not limited to any claims it may have against Little Haiti Gateway Development LLC and James Goldstein, Kevter, Inc. and Carlton Fields, P.A.

### D.  Existing Organizational Documents.

The Debtors' existing organizational documents shall not be amended, modified or changed in any respect that would affect the Distributions required by this Plan. The equity ownership of the Debtors is unchanged by the terms of the Plan, but the Purchase Transaction will result in the Debtors owning no real properties.

### E.  Headings.

Headings are used in the Plan and this Disclosure Statement for convenience and reference only and shall not constitute a part of the Plan or this Disclosure Statement for any purpose.

### F.  Binding Effect.

The Plan shall be binding on and inure to the benefit of the Debtors, Reorganized Debtors, and all of the holders of Claims and Interests and their respective successors and assigns.

### G.   Discharge.

As of the Effective Date, the Little Haiti Debtors shall be discharged.  The holders of claims against the Little Haiti Debtors shall be precluded forever from asserting against the Little Haiti Debtors' estates, the Little Haiti Debtors or their assets, any other or further liabilities, liens, obligation, claims or equity interest, arising or existing prior to the Effective Date, that were or could have been the subject of any Claim, whether or not Allowed. As of the Effective Date, the Little Haiti Debtors shall be discharged, and shall hold the assets received or retained by and pursuant to the Plan, free and clear of all liabilities, liens, claims and obligations or other claims of any nature against the Debtors or their estates, except those duties and obligations created by the Plan.  Other than G Shores and Perdomo, with respect to Debtor 6229 and Debtor 5823, Debtors 6229 and 5823 shall be discharged only upon payment to their creditors after the Effective Date.

### H.  Injunction.

In accordance with section 524 of the Bankruptcy Code and section 105(a) of the Bankruptcy Code, the discharge provided by this Plan and section 1141 of the Bankruptcy Code, and the injunction issued pursuant to this Plan and the Court's powers under section 105(a) among other things, acts as a permanent injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover the Claims or Interests against the Little Haiti Debtors.  All Classes, and the members thereof, all Creditors and all Interested Parties shall be bound by this injunction pursuant to both 524(a) and 105(a).

### I.  Exculpation.

Except as otherwise specifically provided herein, the Debtors, their officers, directors, members, managers, employees, representatives, attorneys, financial advisors, agents, affiliates, or any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, cause of action or liability to one another or to any holder of a Claim or an interest, or any other party in interest, or any of their respective officers, directors, employees, representatives, attorneys, financial advisors, partners, members of partners, managers or members of partners, or agents, or affiliates, or any of such parties' successors and assigns, for any act or omission in connection with the preparation of this Plan, and/or relating to the administration of this case, the pursuit of Confirmation of the Plan, or the distributions under the Plan, except for their willful misconduct, bad faith, breach of fiduciary duty or gross negligence, or malpractice, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

### J.  Withdrawal of the Plan

The Debtors reserve the right, at any time prior to the substantial consummation of the Plan, to revoke or withdraw the Plan.  If the Plan is revoked or withdrawn or if Confirmation order is not entered, the Plan shall be null and void and have no force and effect. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or interests by or against the Debtors or any other Person, constitute an admission of any fact or legal conclusion by the Debtors or any other Person, or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

### K.  Modifications of Plan and Related Documents.

Debtors reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan or this Disclosure Statement in any manner necessary prior to entry of the Confirmation Order. After entry of the Confirmation Order, the Debtor may: (1) amend or modify the Plan and documents related thereto in accordance with, and to the extent permitted by, section 1127(b) of Bankruptcy Code and Bankruptcy Rule 3019, or (2) remedy any defect or omission or reconcile any inconsistency in the Plan or this Disclosure Statement in such manner as may be necessary to carry out the purpose and intent of the Plan.

### L.  Filing or Execution of Additional Documents.

AARONSON SCHANTZ BEILEY P.A. | 2 S. BISCAYNE BOULEVARD, SUITE 3450 | MIAMI, FLORIDA 33131 | TEL 786.594.3000 | FAX 305.424.9336

On or before the Effective Date, the Debtors and the Purchaser shall file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### M.  Severability of Plan Provisions

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### N.  Governing Law

**EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THE PLAN, INCLUDING, WITHOUT LIMITATION, THE PLAN DOCUMENTS, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THE PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THE PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE BANKRUPTCY CODE AND THE LAWS OF THE STATE OF FLORIDA, WITHOUT GIVING EFFECT TO CONFLICTS OF LAW PRINCIPLES THAT WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF FLORIDA OR THE UNITED STATES OF AMERICA.**

### O.  Notices.

All notices, requests and demands and other communications to or upon the Debtors, including any objections to the Disclosure Statement, shall be in writing and shall be delivered in person or by courier, U.S. Mail (postage prepaid) or by facsimile transmission to:

For the Debtors:
By U.S. Mail to:
Mallory Kauderer
300 N.E. 71st Street
Miami, FL 33138

With copies by U.S. Mail and by Email to:
Geoffrey S. Aaronson, Esq.
Tamara D. McKeown, Esq.
One Biscayne Tower, Suite 3450

31

Aaronson Schantz Beiley P.A. | 2 S. Biscayne Boulevard, Suite 3450 | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336

2 S. Biscayne Boulevard
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
gaaronson@aspalaw.com
tmckeown@aspalaw.com

## P. Administrative Closing of Case

Upon substantial consummation of the Plan, including payment of all Allowed Claims of Debtors 6229 and 5823, the then-Reorganized Debtors will file a Final Report and seek Final Decrees Closing these cases.

## ARTICLE XIX: CONCLUSION

Wherefore, for the reasons set forth herein, the Debtors respectfully request that all Creditors review the Plan and this Disclosure Statement and consider whether the Plan is fair and equitable.

Respectfully submitted,

Dated: July 2, 2022.

Jointly Administered Debtors

**Aaronson Schantz Beiley P.A.**

s/ *Mallory Kauderer*
Mallory Kauderer, Manager

s/ *Geoffrey S Aaronson*
Geoffrey S. Aaronson
Florida Bar No. 349623
Tamara D. McKeown, Esq.
Florida Bar No. 773247
One Biscayne Tower, Suite 3450
2 S. Biscayne Boulevard
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
gaaronson@aspalaw.com
tmckeown@aspalaw.com
*Attorneys for Jointly Administered Debtors*

Aaronson Schantz Beiley P.A. | 2 S. Biscayne Boulevard, Suite 3450 | Miami, Florida 33131 | Tel 786.594.3000 | Fax 305.424.9336