

**ORDERED in the Southern District of Florida on November 21, 2022.**

Robert A. Mark, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re: | CASE NO. 22-10385-RAM |
| 6200 NE 2ND AVENUE, LLC, | CHAPTER 11 |
| Debtor. | JOINTLY ADMINISTERED |

**ORDER SUSTAINING, IN PART, AND OVERRULING, IN PART, DEBTORS' AMENDED OBJECTION TO THE CLAIMS OF BENWORTH CAPITAL PARTNERS**

Introduction

On November 1, 2022, the Court entered its Amended Order: (1) Authorizing Debtors to Proceed With Pre-Auction and Auction Sales of Debtors' Properties; (2) Approving Marketing, Bidding and Sale Procedures; (3) Approving Form and Manner of Notice of Sales; (4) Reserving § 506(c) Potential Surcharge Rights; and (5) Approving the Sale of Debtors' Interests in Debtors' Real Properties Free and Clear of Liens, Claims and Encumbrances Pursuant to § 363(f) (the

"Sale Procedures Order") [DE# 341]. Pursuant to that Order, the eight debtors in these administratively consolidated cases are selling 17 properties including two parcels owned by Debtor, 5823 NE 2nd Avenue, LLC (the "5823 Properties"), and one parcel owned by Debtor, 6229 NE 2nd Avenue, LLC (the "6229 Property").

Benworth Capital Partners, LLC ("Benworth") services the mortgage debt encumbering the 5823 Properties and the 6229 Property. The mortgage debt was reduced to final judgments of foreclosure in state court prior to the filing of the relevant bankruptcy cases. Specifically, on March 23, 2022, the state court entered a Summary Final Judgment of Foreclosure against the 5823 Properties in the amount of $844,938.18 (the "5823 Judgment"), and on April 27, 2022, the state court entered a Final Judgment of Foreclosure against the 6229 Property in the amount of $1,061,867.11 (the "6229 Judgment"). After the filing of these bankruptcy cases, Benworth filed two proofs of claim (together, the "Claims")[1] based on the foreclosure judgments.

The Sale Procedures Order provides that "Benworth may credit bid its secured claim in an amount to be determined by the Court prior to the auction." [DE# 341, p.5, decretal para. 7]. This Order determines the amounts Benworth will be permitted to credit bid.

---

[1] The claims are Proof of Claim No. 1 filed by Benworth in Case No. 22-14331-RAM, *In re 6229 NE 2nd Avenue LLC* (the "6229 Case"), and Proof of Claim No. 2 filed by Benworth in Case No. 22-14767-RAM, *In re 5823 NE 2nd Avenue, LLC* (the "5823 Case").

2

<u>Additional Factual and Procedural Background</u>

Pending before the Court is the Debtors' Amended Objection (the "Amended Objection") [DE #316] to the two Benworth Claims. The Debtors object to the post-judgment interest rate claimed by Benworth, to the post-judgment attorney's fees claimed by Benworth, and to Benworth's failure to offset rents on the 6229 Property received during the pendency of these bankruptcy cases against the total indebtedness claimed. On October 19, 2022, the Court entered its Order Setting Filing Deadlines and Evidentiary Hearing on Debtors' Amended Objection to the [Benworth] Claims [DE# 319]. That Order scheduled an evidentiary hearing for November 17, 2022, and stated that "[f]or purposes of the hearing, the Court presumes that there is equity in Benworth's collateral, and any award of post-petition attorney's fees or interest will apply for purposes of determining the amount of Benworth's credit bid at the auction sale." [DE# 319, p.3, para. 6].

On October 28, 2022, Benworth filed a Response to the Debtors' Amended Objection [DE #340; 358]. The Debtors filed a Reply [DE #353] on November 4, 2022, and on November 17, 2022, the Court conducted an evidentiary hearing on the Debtors' Amended Objection.

## **Discussion**

*Post-Judgment Interest*

The relevant facts are not in dispute. The notes do not specify the interest rate applicable after issuance of a judgment.

3

The notes identify only the interest rate that should apply upon and after a default. The specific provision in the note reads as follows:

> Upon the occurrence of any event of default as defined herein, all sums outstanding under this Promissory Note *shall thereon immediately bear interest at the highest rate allowable by law*, without notice to the Maker or any guarantor or endorser of this Promissory Note, and without any affirmative action or declaration on the part of the Lender.

The pre-judgment interest rate established by the above-quoted language is 25%, which is the highest interest rate allowable under Florida law. Fla. Stat. § 687.071(2). However, the judgments award pre-judgment interest at a default rate of 18%. As stated earlier, and critical to the Court's decision, the notes do not state that the contract default rate is applicable after entry of a judgment.

The following three witnesses testified at the November 17th evidentiary hearing: (i) the Debtors' defense counsel in the state court foreclosure actions, Arnaldo Velez, Esq., (ii) Benworth's counsel in the state court foreclosure actions, Albert D. Rey, Esq., and (iii) Benworth's Comptroller, Mildred Avila.

Ms. Avila testified regarding Benworth's servicing of the mortgage debt.[2] She stated that the state court foreclosure judgments award pre-judgment interest at a default rate of 18%

---

[2] Ms. Avila also testified as to the retention and payment of Benworth's bankruptcy counsel, D. Jean Ryan, Esq., and Benworth's foreclosure counsel, Albert D. Rey, Esq.

4

because of an error by Benworth's servicing department. Most of Benworth's loans are in amounts less than $500,000.00, and charging more than 18% interest for such loans is prohibited under Florida law. Fl. Stat. § 687.02(1).

The loans at issue in this case exceed $500,000.00, and applicable usury statutes cap the interest that can be charged for such loans at 25%. Fl. Stat. §§ 687.02(1), 687.071. Ms. Avila testified that the pre-judgment, default interest rate should have been 25%, but the judgments award only 18% because Benworth's servicing department incorrectly concluded that only 18% interest was due. Benworth did not attempt to amend the judgements to increase the pre-judgment default rate to 25%. However, Benworth is seeking allowance of a claim for post-judgment interest at 25%.

Regarding post-judgment interest, both Mr. Rey and Mr. Velez testified that the judgments are unambiguous. However, both attorneys also testified that they interpret the judgments differently. Mr. Rey testified that the judgments clearly impose a 25% post-judgment interest rate, whereas Mr. Velez testified that the judgments clearly impose the Florida statutory judgment rate of 4.25%.

The Court found all witnesses to be credible.

If the interest rate language in the state court judgments was clear and unambiguous, this Court would likely enforce that rate, even if the state court erred in its post-judgment interest

calculation. *See Nicholson v. Shafe*, 558 F.3d 1266 (11th Cir. 2009) (discussing *Rooker-Feldman* doctrine's applicability to state court final judgments). But despite Benworth's attempts to make it so, the language does not unambiguously support Benworth's argument to apply a 25% rate. Here is the language in the judgments:

> **Interest.** The grand total amount referenced in Paragraph 1 shall bear interest from this date forward at the highest legal rate of interest pursuant to the terms of the loan documents and as set forth in the Note and Florida Statutes, for all of which let execution issue.

The meaning of that post-judgment interest award is the crux of the parties' dispute. Benworth argues that the judgment unambiguously fixes the post-judgment interest rate at the 25% default rate payable under the note. The Debtors argue that the Florida judgment rate of 4.25% applies. Fl. Stat. § 55.03(1).

The Court agrees with the Debtors.

Had the judgments expressly stated that the total judgment award would bear interest at a rate of 25% per annum, the Court would enforce the judgments as written. But that is not what the judgments state.

Had the notes expressly stated that the default rate of interest of 25% would apply to any judgment award, the Court would find that the judgments bear interest at the rate of 25% per annum. But that is not what the notes state. The notes are silent regarding the interest rate applicable post-judgment. The word "judgment" is

6

wholly absent from the note provisions that dictate the applicable interest rate.

In *Whitehurst v. Camp*, the Supreme Court of Florida held that under the doctrine of merger, the statutory judgment rate applies to judgment awards if the note on which the judgment is based is silent with respect to the interest rate that should apply post-judgment.  The court's holding is clear: "[B]ecause a judgment is an obligation separate from the underlying contractual debt, to contractually set the rate of post-judgment interest the parties must expressly provide that the agreed interest rate also applies to any judgment or decree entered on the underlying debt." 699 So.2d 679, 682 (Fla. 1997) (quoting *Whitehurst v. Camp*, 677 So.2d 1361, 1362-63 (Fla. 1st DCA 1996)) (emphasis omitted).

The Court finds that the interest rate language in the judgments is ambiguous.  As such, the Court must interpret the judgments to reach the result mandated by Florida law. Therefore, the Court interprets the state court judgment awards of post-judgment interest "at the highest legal rate of interest" to mean "at the highest legal rate of interest applicable to judgments" as opposed to "the highest legal rate of interest applicable to loans."  In the absence of express language to the contrary in either the note or the judgment, that rate is 4.25%.

7

*Attorney's Fees*

The Debtors object to Benworth's claim for attorney's fees incurred after entry of the state court judgments. Those amounts include fees charged by Benworth's state court counsel, Mr. Rey, and by Benworth's bankruptcy counsel, Ms. Ryan. Some of the fees cover services rendered after issuance of the judgments but prior to commencement of these bankruptcy cases. The rest of the fees cover services rendered after the filing of these bankruptcy cases.

Paragraphs 4 and 11 of the mortgages contain the following provisions regarding entitlement to attorney's fees:

> 4. ATTORNEY'S FEES AND COSTS. The Mortgagee shall recover from the Mortgagor, and this Mortgage shall secure payment of, all and singular the costs, charges and expenses, including but not limited to, reasonable trial, appellate and bankruptcy attorneys' fees, because of the failure on the part of the Mortgagor to perform, comply with, and abide by, each and every of the stipulations, agreements, conditions and covenants of the Note and this Mortgage, or either, whether or not suit is brought, and every such payment made by the Mortgagee shall bear interest from the date thereof at the maximum rate permitted by law.

> 11. DEFENSE OF MORTGAGED PROPERTY AND MORTGAGE: If any action or proceeding shall be commenced by any person other than the Mortgagee, and Mortgagee is made a party, or in which it shall become necessary for Mortgagee to defend or take action to uphold or defend the lien of this Mortgage, all sums paid or incurred by the Mortgagee for the expense of any litigation, including court costs and <u>attorneys' fees incurred in any trial, appellate, and bankruptcy proceedings, to prosecute or defend the rights and liens created by this Mortgage</u> shall be paid by the Mortgagor, together with interest thereon at the maximum rate permitted by law from the date thereof, and any such sum and interest thereon shall be a claim upon the Mortgaged Property, attaching or accruing subsequent to

8

> the lien of this Mortgage, and shall be secured by the lien of this Mortgage.

(Emphasis added).

The Debtors argue that the above-quoted attorney's fee provisions do not support an award of fees incurred after entry of the foreclosure judgments because the word "collection" is not contained in the provisions. The Court disagrees. The fee provisions refer to bankruptcy proceedings which, like here, often occur after entry of a foreclosure judgment. Therefore, Benworth is entitled to post-judgment fees under the loan documents.

At trial, Benworth introduced Benworth's Exhibits B10 [DE# 366-1] and B12 [DE# 369-1]. These itemized billing statements prepared by the Ryan Law Firm, P.A. ("Ryan") detail Ms. Ryan's services in the 6229 and 5823 bankruptcy cases. Benworth's Comptroller, Mildred Avila, testified at trial that Benworth had no objection to the invoices. The Debtors initially questioned the 7 hours of estimated time for each case that was included in the invoices, but once Ms. Ryan explained that her actual hours have already exceeded the estimate, the Debtors did not argue for any reduction in Ms. Ryan's fees. Therefore, Benworth's claim for credit bid purposes in the 6229 Case will include $55,548.65 in fees and costs for Ryan's services. Benworth's claim for credit bid purposes in the 5823 Case will include $45,660 in fees and costs for Ryan's services.

9

Ms. Avila also testified that Benworth had no objection to the hours logged by Albert Rey, Esq., Benworth's state court foreclosure counsel, for services Mr. Rey provided after entry of the foreclosure judgements. These hours are detailed in Benworth's Ex. B8 [DE# 365-3]. At an agreed rate of $450/hour, Mr. Rey's fees total $9,184.50 in the 6229 Case, and $5,845.50 in the 5823 Case. The attorney's fees in each case, after adding Ms. Ryan's fees and Mr. Rey's fees, total $64,733.15 in the 6229 case and $55,548,65 in the 5823 Case.

*Offset for Rents Received*

The parties agree that the total amount of Benworth's claim in the 6229 Case should be reduced by $5,400 in rents that Benworth received after entry of the foreclosure judgment. Therefore, Benworth's claim in the 6229 Case must be reduced by this amount and by any additional post-judgment rents it receives prior to the auction.

Therefore, and for the additional reasons stated on the record at the November 17th hearing, it is -

**ORDERED** as follows:

1.   The Debtors' Amended Objection is sustained, in part, and overruled, in part, as set forth below.

2.   The post-judgment interest rate applicable to the Benworth Claims is 4.25%.

3.   For credit-bidding purposes in the auction sale of the 6229 Property, Benworth's claim in the 6229 Case shall be comprised

of (1) the 6229 Judgment; (2) interest at 4.25% from the date of the judgment through the date of the auction; and (3) $64,733.15 in post-judgment attorney's fees. This total must then be reduced by the amount of rent collected post-judgment on the 6229 Property. The post-judgment interest must also be reduced slightly to account for the rents that reduced the Judgment amount as received.[3] For credit-bidding purposes in the auction sale of the 5823 Properties, Benworth's claim in the 5823 Case shall be comprised of (1) the 5823 Judgment; (2) interest at 4.25% from the date of the Judgment through the date of the auction; and (3) $55,548.65 in post-judgment attorney's fees.

###

**COPIES TO:**
Geoffrey S. Aaronson, Esq.
Steven L. Beiley, Esq.
Jordi Guso, Esq.
Donald R. Kirk, Esq.
Tamara D. McKeown, Esq.
UST
Chad P. Pugatch, Esq.
Robin J. Rubens, Esq.
D Jean Ryan, Esq.
Steven D. Schneiderman, Esq.
Jason Slatkin, Esq.

---

[3] As discussed at the November 17th hearing, this adjustment in post-judgment interest will be relatively small, and Benworth and the Debtor shall agree on a number without billing any additional attorney's fees. The Court suggests simply applying the rents at the mid-point of the post-judgment, pre-auction period, and calculating interest on the full amount for the months prior to the mid-point, and on the reduced judgment amount in the months thereafter.