

**ORDERED in the Southern District of Florida on January 5, 2023.**

_____
**Robert A. Mark, Judge**
**United States Bankruptcy Court**

_____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

In re:

| | |
|---|---|
| 6200 NE 2ND AVENUE, LLC, | Case No.: 22-10385-RAM |
| | Chapter 11 |
| | Jointly Administered |
| | |
| 5911 NE 2ND AVENUE, LLC | Case No.: 22-10386-RAM |
| 5901 NE 2ND AVENUE, LLC | Case No.: 22-10387-RAM |
| 5900 NE 2ND AVENUE, LLC | Case No.: 22-10388-RAM |
| 5700 NE 2ND AVENUE, LLC | Case No.: 22-10390-RAM |
| 5524 NE 2ND AVENUE, LLC | Case No.: 22-10392-RAM |
| 175 NE 55TH STREET, LLC | Case No.: 22-10391-RAM |
| 6229 NE 2ND AVENUE, LLC | Case No.: 22-14331-RAM |
| 5823 NE 2ND AVENUE, LLC | Case No.: 22-14767-RAM |

Debtors.
_____/

**ORDER APPROVING AND CONFIRMING
DEBTORS' COMBINED PLAN OF LIQUIDATION [FOURTH
AMENDED PLAN] AND DISCLOSURE STATEMENT [ECF 336, 337]
AND SETTING POST-CONFIRMATION STATUS CONFERENCE**

**THIS MATTER** came before the Court for hearing on January 3, 2023, at 10:00 a.m. (the "Confirmation Hearing") to consider approval and confirmation of Debtors' Combined Plan of Liquidation [Fourth Amended Plan] and Disclosure Statement (ECF 336, 337; the "Plan") filed by the jointly administered Chapter 11 Debtors and Debtors in Possession, 6200 NE 2ND AVENUE, LLC, 5911 NE 2ND AVENUE, LLC, 5901 NE 2ND AVENUE, LLC, 5900 NE 2ND AVENUE, LLC, 5700 NE 2ND AVENUE, LLC, 5524 NE 2ND AVENUE, LLC, 175 NE 55TH STREET, LLC. 6229 NE 2ND AVENUE, LLC and 5823 NE 2ND AVENUE, LLC. (collectively the "Debtors").[1] The Bankruptcy Court, having considered the Plan, the Affidavit of Mallory Kauderer (the "Confirmation Affidavit") [ECF 510], the Certificate of Proponent of the Plan [ECF 493], the Objection to Fourth Amended Plan filed by Little Haiti Gateway Holdings, LLC ("LHGH") [ECF 450], the Objection to Plan, Disclosure Statement and Confirmation filed by Benworth Capital Partners, LLC ("Benworth")[2] [ECF 462], the Limited Objection of Kevter, Inc. to Debtor's Proposed Fourth Amended Plan [ECF 467], the Final Chapter 11 Fee Application for Debtors' Counsel, Aaronson Schantz Beiley P.A. ("ASBPA") [ECF 419], the Supplement to Final Chapter 11 Fee Application for Debtors' Counsel, ASBPA [ECF 512], the Chapter 11 Fee Application for Debtors' Special Real Estate Counsel, Jonathan Alfonso, Esq. and Title Answers, a Law Firm ("Alfonso") [ECF 420], the Supplement to Little Haiti Gateway Holdings, LLC's Motion for an Award of Attorney's Fees and Costs as an Oversecured Creditor [ECF 505], Benworth Capital Partners, LLC's and Albert D. Rey, Esq.'s Supplemental Fee Applications [ECF 506], the Debtors'

---

[1]   Capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Plan.

[2]   Benworth is the loan servicer for the following secured lender creditors of Debtor 6229 NE 2nd Avenue, LLC ("Debtor 6229"): G. Shores Holdings, LLC (32.94%) JMG Holdings, LLC (20.59%), MCCV Holdings, LLC (20.59%), and The Rock-Miami Church Inc. (25.88%) (collectively the "G Shores Lenders"). Benworth is also the loan servicer for the following secured lender creditors of Debtor 5823 NE 2nd Avenue, LLC ("Debtor 5823"): Alexis Perdomo (4.44%), JMG Holdings, LLC (22.22%), MCCV Holdings, LLC (22.22%), MIG Financial Group, LLC (25.19%), Reef Inspired LLC (11.11%) and The Maria L. Santaya Living Trust (14.82%) (collectively the "Perdomo Lenders").

Reply Memorandum Regarding Surcharge [ECF 507], the exhibits and other evidence presented or proffered at the Confirmation Hearing, the statements and representations of counsel, and the relevant record in this case, and pursuant to Bankruptcy Rule 7052, makes the following findings of fact and conclusions of law and issues this Order confirming the Plan (the "Confirmation Order").

1. The findings of fact and conclusions of law set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any finding of fact herein later shall be determined to be a conclusion of law it shall be so deemed.

2. The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the District Court's general order of reference. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. With regard to confirmation of the Plan and final approval of the Disclosure Statement, the Court finds as follows:

   a. The Plan is predicated on the auction sale of all Debtor Properties. The auction sale was authorized by the Amended Order: (1) Authorizing Debtors to Proceed with Preauction and Auction Sales of Debtors' Properties; (2) Approving Marketing, Bidding and Sale Procedures; (3) Approving Form and Manner of Notice of Sales; (4) Reserving § 506(C) Potential Surcharge Rights; and (5) Approving the Sale of Debtors' Interests in Debtors' Real Properties Free and Clear of Liens, Claims and Encumbrances Pursuant to § 363(F) [ECF 341] and the related Orders pertaining to the auction sale [ECF 333, 335 and 379] (collectively the "Sale Order");

3

    b. Fisher Auction Company was authorized to conduct the auction sale pursuant to Order Approving Employment of Lamar Fisher and Fisher Auction Company as Broker/Auctioneer [ECF 317];

    c. The auction sale occurred on December 15, 2022, and the Debtors filed a Report of Auction Sale on December 17, 2022 [ECF 487]. The auction sale results were approved by the Court at a hearing on December 20, 2022, as reflected in the Court's Order Approving Sale of Debtors' Properties Free and Clear of Liens, Claims and Encumbrances [ECF 500] (the "Sale Approval Order"). The Sale Approval Order and Debtors' Plan contemplate that the Plan will be implemented through the sales of the Debtor Properties, with the proceeds of the sales to be distributed in accordance with the terms of the Plan;

    d. The Plan calls for a waterfall distribution to creditors in order of legal priorities, with secured real estate liens first, secured mortgage judgment holders second, administrative debts thereafter, and priority and unsecured creditors thereafter;

    e. Secured creditors LHGH and Benworth voted to reject the Plan. All unsecured creditors who submitted ballots voted to accept the Plan.

    f. LHGH was the successful bulk purchaser for the 14 Debtor Properties that are subject to its lien, and Little Haiti Arts Development, LLC ("LHAD") was the successful bulk purchaser of two other Debtor Properties that are owned by Debtor 5823 and are subject to a lien by Benworth. An unrelated third party, SUR Capital, LLC, was the successful individual purchaser of the remaining Debtor Property owned by Debtor 6229, which also is subject to a lien by Benworth. However, although the auction sale produced sufficient proceeds to fully satisfy the secured tax debt and all allowed mortgage debt on all Debtor Properties, once those obligations are paid from the sale proceeds, insufficient proceeds will remain to satisfy all administrative debt, as required for confirmation by the Bankruptcy Code.

g. On or about June 7, 2022, LHGH acquired its secured position against 14 of the Debtor Properties from Chemtov Mortgage Group, LLC. ("Chemtov"). Before assigning its secured claim to LHGH in this case, Chemtov had agreed to a carve-out for the Debtors' professionals' fees from the Debtors' assets, as reflected in the prior cash collateral Orders entered by the Court [ECF 35, 210, 217, 338]. On November 1, 2022, LHGH asserted an objection to the carve-out for the fees of Debtors' professionals [ECF 344] and on November 18, 2022, the Court modified ECF 338 to reserve ruling on the carve-out issue [ECF 380]. Predicated upon Chemtov's prior agreement to a carve-out, the Debtors sought to surcharge the collateral securing LHGH's claim, as the assignee of Chemtov's secured claim, for outstanding administrative fees and costs.

h. The Debtors and LHGH have resolved the Debtors' surcharge demand. The settlement, as set forth in more detail below, provides, *inter alia,* that upon the occurrence of certain conditions, LHGH will contribute $230,000.00 to the estate and the Debtors will agree to accept payment of less than the full amount of administrative expenses on the Effective Date in order to confirm the Plan. As a result, the administrative claims in this case will be paid in full, as compromised, on the Effective Date.

i. Benworth also has agreed to contribute a total of $10,000.00 towards the resolution of the administrative claims in this case.

j. The Debtors, LHGH and Benworth also have agreed to resolve certain of the objections to Plan confirmation filed by LHGH and Benworth [ECF 450 and 462 respectively] upon the terms set forth in this Order, and the remaining objections have been resolved by the Court.

k. Additionally, LHGH and Benworth have agreed to modify their votes rejecting the Plan and have agreed to accept the Plan.

Based upon the above settlements, the Court's rulings at the Confirmation Hearing, the Court's acceptance of the Confirmation Affidavit into evidence without objection, the modified votes of LHGH and Benworth to accept the Plan, and the agreements of certain administrative creditors to accept less than full payment, and the acceptance of the Plan by the unsecured creditors who voted on the Plan, the Court finds that the Plan is feasible and meets the criteria set forth in 11 U.S.C. §§ 1123 and 1129 as set forth hereunder.

It is therefore **ORDERED AND ADJUDGED** that:

1.      The Debtor provided adequate and sufficient notice of: (i) the Plan and Disclosure Statement; (ii) the deadline to file and serve objections to Confirmation of the Plan and the adequacy of the Disclosure Statement; and (iii) the Confirmation Hearing, to all known creditors, equity security holders, the Office of the U.S. Trustee, all and other parties in interest, as reflected in the Debtors' *Certificate of Service* [ECF 396].

2.      Based upon the fee and cost reimbursement applications submitted by Debtors' professionals [ECF 419, 420 and 512] and the representations of Jonathan Alfonso, Esq. on the record, the Court awards Aaronson Schantz Beiley P.A., the Debtors' Chapter 11 counsel, a total fee of $945,897.00 and total cost reimbursement of $21,571.02; and awards Title Answers and Jonathan Alfonso, Esq. a total fee of $55,000.00 and cost reimbursement of $13,500. Both awards will be reflected separately in the Orders to be entered on the firms' respective fee applications.

3.      The Debtor's Plan is based upon proceeds achieved from the Court authorized auction sale of the Debtor Properties. The auction sale produced funds sufficient to fully satisfy tax liens and mortgage judgment liens on the Debtor Properties, but those sale proceeds were insufficient to satisfy all administrative debt as awarded. However, as set forth *supra,* LHGH and the Debtors have agreed to fully settle and resolve all disputes pertaining to any carve-out of LHGH's liens, or the Debtors' request to surcharge the LHGH collateral, and as announced on the

record at the Confirmation Hearing, LHGH and the Debtors agreed to the following, which is approved by the Court:

1. Provided that (a) the *Order Approving Sale of Debtors' Properties Free and Clear of Liens, Claims and Encumbrances* [ECF No. 500] ("Sale Approval Order") becomes a final and non-appealable Order on January 5, 2023, and (b) the closings on the bulk sales of: (i) the 14 Debtor Properties subject to the lien of LHGH to LHGH; and (ii) the two Debtor Properties owned by Debtor 5823 to LHAD, both occur on January 6, 2023 (the "Closing Date"), then LHGH shall contribute $230,000 to the Debtors at closing, which shall be funded as follows:

   (I) first, the Debtors shall retain all cash collateral on deposit in their debtor-in-possession ("DIP") bank accounts as of the Closing Date, free and clear of any lien or claim of LHGH;

   (II) second, after crediting the amount of cash collateral in the Debtors' DIP accounts as of the Closing Date, LHGH shall waive and shall not recover from the Debtors and their estates the total sum of $157,119.99, which represents the accrued interest on the LHGH secured claim from the date of the auction sale through the Closing Date ($109,452.00), plus the supplemental attorney's fees and costs awarded to counsel for LHGH at the Confirmation Hearing ($47,667.99), the total of which will instead be included in the net sale proceeds for the Debtors; and

   (III) third, after application of the credits set forth in I and II above, the remaining balance necessary to reach $230,000.00 shall be paid by LHGH to the Debtors in cash, at closing.

2. The Plan shall be implemented via the sale of the Debtor Properties in accordance with the Plan and the Sale Approval Order, which will close after the entry of this Order. Accordingly, pursuant to 11 U.S.C. §1146(a), the execution, delivery and recording of the deeds, mortgages or any other documents in connection with the sale of the Debtor Properties shall not be subject to any documentary, stamp or any other similar tax imposed by any state or local taxing authority.

4. Provided that the Sale Approval Order becomes a final and non-appealable Order and that the provisions of 11 U.S.C. §1146(a) shall also apply to the sale of the Debtor Properties subject to Benworth's liens, the Debtors and Benworth have agreed that Benworth also will contribute a total of $10,000.00 towards the payment of administrative expenses in this case, which will be reflected as a contribution of $5,000.00 by Benworth at each of the respective closings of

7

the sale of the Debtor Properties owned by Debtors 6229 and 5823, and that agreement is approved by the Court.

5. Based on the supplemental request for attorneys' fees and costs submitted by Berger Singerman, counsel to LHGH [ECF 505], and the representations of Robin Rubens, Esq. on the record regarding the amount of additional accrued interest due to LHGH from the auction sale date to the January 6, 2023 closing date, the Court awards LHGH $109,452.00 in additional accrued interest and $47,667.99 in additional attorneys' fees and costs, for a total debt of $9,904,365.32. However, based on the agreed resolution of the surcharge issue by the Debtors and LHGH in paragraph 3 of this Order, LHGH waives the additional award of accrued interest and attorneys' fees totaling $157,119.99, and that amount shall be credited to the Debtors at the January 6, 2023 closing. Therefore, the total balance due to LHGH at the closing of the bulk sale of the 14 Debtor Properties subject to the lien of LHGH is $9,642,113.82.

6. Based on the supplemental request for attorneys' fees and costs submitted by Jean Ryan, Esq. and Albert Rey, Esq., counsel to Benworth [ECF 506], and the additional accrued interest due to Benworth from the auction sale date to the respective closing dates, the Court awards the following to Benworth: (i) as to Debtor 6229, $3,021.48 in additional accrued interest and $17,372.54 in additional attorneys' fees; and (ii) as to Debtor 5823, $2,164.36 in additional accrued interest and $17,570.06 in additional attorneys' fees. Thus the total debt owed to Benworth by Debtor 6229 is $1,181,234.58, which is comprised of: (a) $1,061,867.11 (Final Judgment amount); (b) $32,604.96 in accrued interest on Final Judgment (3/23/22 through 1/15/23 at $123.64 per diem); (c) $10,665.00 (prior state court Fee Judgment); (d) $301.32 in accrued interest on Fee Judgment (5/18/22 through 1/15/23 at $1.24 per diem); (e) $55,548.65 (prior fee award to Benworth's bankruptcy counsel); (f) $9,184.50 (prior fee award to Benworth's state court counsel); (g) $10,195.54 (supplemental fee award to Benworth's bankruptcy counsel); and (h) $7,177.50 (supplemental fee award to Benworth's state court counsel); less (i) a credit of $6,300.00 to Debtor 6229 (for rents paid during the Chapter 11 case).

The total debt owed to Benworth by Debtor 5823 is $943,429.36, which is comprised of: (a) $844,938.18 (Final Judgment amount); (b) $29,415.62 in accrued interest (3/23/22 through 1/6/23 at $98.38 per diem); (c) $45,660.00 (prior fee award to Benworth's bankruptcy counsel); (d) $5,845.50 (prior fee award to Benworth's state court counsel); (e) $10,392.56 (supplemental fee award to Benworth's bankruptcy counsel); and (f) $7,177.50 (supplemental fee award to Benworth's state court counsel). However, based on the agreed resolution of the surcharge issue between the Debtors and Benworth, Benworth agrees to contribute $5,000.00 to the Debtors' estate at each of the respective closings on the Debtor Properties owned by Debtors 6229 and 5823, and those amounts shall be credited to the Debtors at those closings. Therefore, the total balance due to Benworth, on behalf of the G Shores Lenders, at the closing of the sale of the Debtor 6229 Property is $1,176,234.58, and the total balance due to Benworth, on behalf of the Perdomo Lenders, at the closing of the sale of the Debtor 5823 Properties is $938,429.36.

7.  Based upon the settlements of the Debtors' surcharge motion, said motion is denied as moot.

8.  At the closing of the sale of the Debtor 6229 Property to SUR Capital, LLC, the remaining net sale proceeds after payment of the secured tax liens and the Benworth lien on that property (the "Net 6229 Proceeds"), shall be held in escrow by the Escrow Agent, Title Answers, until: (a) this Court resolves Debtor 6229's pending adversary proceeding against Carlton Fields in favor of Debtor 6229 and that Order has become a final Order, in which case the Escrow Agent shall release the Net 6229 Proceeds to the Debtors' Chapter 11 counsel to be distributed to remaining administrative expenses in accordance with the waterfall in Debtors' Plan; or (b) this Court resolves Debtor 6229's pending adversary proceeding against Carlton Fields in favor of Carlton Fields and that Order has become a final Order, and thereafter (i) the pending state court malpractice case against Carlton Fields (Miami-Dade County Circuit Court Case No. 2022-

9

000785-CA-01 (43)) has reached a final resolution against Carlton Fields and that Order has become a final Order, in which case the Net 6229 Proceeds shall be released by the Escrow Agent to the Debtors' Chapter 11 counsel to be distributed to remaining administrative expenses in accordance with the waterfall in Debtors' Plan, or (ii) the pending state court malpractice case against Carlton Fields (Case No. 2022-000785-CA-01 (43)) has reached a final resolution in favor of Carlton Fields and that Order has become a final Order, in which case the Net 6229 Proceeds shall be released by the Escrow Agent to Carlton Fields, or (iii) the pending state court malpractice case against Carlton Fields (Case No. 2022-000785-CA-01 (43)) has reached a final resolution other than as set forth in (i) or (ii), in which case the Net 6229 Proceeds shall be released as determined by the state court. Carlton Fields has agreed to this escrow arrangement. In addition, the Court finds this arrangement fair and equitable under 11 U.S.C. § 1129(b)(2)(A).

9. Based upon the foregoing, all first-tier payments of the secured tax liens, and second-tier payments of the secured mortgage/judgment liens to LHGH and Benworth, in the amounts set forth in this Confirmation Order, shall be paid in full at the respective closings. The third-tier payments of administrative debt to Fisher Auction Company for its marketing expenses ($30,225.68) and to the United States Trustee for its fees, as determined in accordance with the U.S. Trustee's guidelines and applicable bankruptcy law, also shall be paid in full at closing. The remaining third-tier payments of administrative debt to the ASBPA and Alfonso, as compromised, also shall also be paid at closing. All payments required to be made at the closings shall be transmitted by wire transfer unless otherwise requested or indicated. After payment of the compromised administrative debt to the Debtors' professionals, there will be no remaining funds available for the payment of priority or unsecured debt under the Plan. All sale transactions and disbursements by the Debtors shall be properly reported in the monthly operating reports for the

respective Debtors. To the extent that there are any additional funds received after the closings, those funds shall be distributed in accordance with the waterfall in Debtors' Plan.

10. Accordingly, the Court finds that the Debtors' Plan complies with the applicable provisions of the Bankruptcy Code, and that the Debtors, as Plan proponents, have complied with the applicable provisions of the Bankruptcy Code, and that the following requirements of 11 U.S.C. §1129(a) have been met:

a. The Plan has been proposed in good faith and not by any means forbidden by law.

b. All payments to be made under the Plan, or in connection with the Plan, have been approved by the Court as reasonable.

c. At least one class of claims that is impaired under the Plan has accepted the Plan, without including the acceptance of the Plan by any insider.

d. Confirmation of the Plan is not likely to be followed by the need for further financial reorganization.

e. The Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims and interests.

f. The requirement that all administrative claims be paid in full is satisfied by the agreement between Debtors and LHGH and the agreement of Debtors' professionals to compromise the amounts of their administrative claims.

g. The Debtors, their Manager and their counsel: (i) have acted in good faith in negotiating, formulating, and proposing the Plan and any agreements, compromises, settlements, transactions and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby, and (b) take the actions authorized and directed or contemplated by this Confirmation Order.

      h.      Confirmation of the Plan is in the best interests of the Debtors, their estate and their creditors.

      i.      The Debtors have met their burden of proving the elements of Section 1129(a).

11.      The Court approves on a final basis the Debtors' Disclosure Statement filed with the Court at ECF 337 as having adequate information for soliciting acceptances and rejections of the Plan.

12.      The Debtors' Fourth Amended Plan [ECF 336], as modified by this Order, is confirmed and approved in all respects.

13.      LHGH filed an objection to confirmation of the Debtors' Plan [ECF 450], which was heard at the Confirmation Hearing.  LHGH's objections were based on: (i) the amount, timing and method of transmittal of the Debtors' distribution of the secured claim amount to LHGH; (ii) the default remedies set forth in Article 12 of Debtors' Plan, which LHGH contends should provide for immediate stay relief in the event of a default; (iii) the requirement in Article 8 of Debtors' Plan that upon Debtors' full payment of LHGH's debt, LHGH must file a satisfaction of judgment in the state court foreclosure action against Debtors and dismiss that action with prejudice; and (iv) Debtors' assumption of all leases on the Debtor Properties in Article 10 of the Plan.  The objections asserted by LHGH in (i) and (iv) above have been resolved by the terms of this Order.  The objection asserted by LHGH in (ii) above is overruled, without prejudice to LHGH's right to seek stay relief if the Debtors take unjustified actions which cause the sale transactions not to close on a timely basis.  The objection asserted by LHGH in (iii) above is overruled, and upon LHGH's receipt of full payment of its outstanding debt from the Debtors, LHGH shall file a satisfaction of judgment in the state court foreclosure action, and thereafter dismiss that action with prejudice as to all parties.  To the extent any other objection by LHGH is not resolved by the Plan or this Order, such objection is overruled.

14. Benworth also filed an objection to confirmation of the Debtors' Plan [ECF 462], which was heard at the Confirmation Hearing. Benworth's asserted numerous objections to Debtors' Plan, most of which have been resolved by the terms of this Order and the fact that Benworth will receive payment in full of its secured claims as established by this Order. Benworth also adopted the objections asserted by LHGH. Benworth's objection to the default remedies set forth in Article 12 of Debtors' Plan are overruled, without prejudice to Benworth's right to seek stay relief if the Debtors take unjustified actions which cause the sale transactions not to close on a timely basis. Benworth's objection to the Exculpation clause in Debtors' Plan is overruled, and upon Benworth's receipt of full payment of its outstanding debts from Debtors as established by this Order, Benworth shall file satisfactions of judgment in the state court foreclosure actions against Debtors 6229 and 5823, and thereafter dismiss those actions with prejudice as to all parties. To the extent any other objection by Benworth is not resolved by the Plan or this Order, such objection is overruled.

15. Interested party Kevter, Inc. also filed a limited objection [ECF 467], not to confirmation of Debtors' Plan *per se*, but instead to request the entry of an Order directing that any equity from the sales of the Debtor Properties be held in escrow pending resolution of the issue of entitlement of those funds in the state court litigation between Kevter and non-debtor affiliates of the Debtors. However, because the approved sales of the Debtor Properties will not result in any distributions to equity in this case, Kevter withdrew its limited objection on the record at the Confirmation Hearing.

16. Any other objections to Confirmation not withdrawn or otherwise addressed in this Order are expressly overruled.

17. Unless otherwise provided herein, all injunctions or stays provided for in this Chapter 11 case pursuant to section 105 or 362 of the Bankruptcy Code, or otherwise, and in

13

existence on the Confirmation Date, shall remain in full force and effect until entry of a Final Decree closing this Case.

18.    On or before the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930 shall be paid in full by the Debtors.

19.    In the event of any inconsistency between the Plan and this Confirmation Order, this Order shall govern.

20.    After the entry of this Order, the Debtors may seek to modify the Plan (a) to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in this Order, as may be necessary to carry out the purposes and effects of the Plan, provided that the Debtors: (i) upon sufficient notice to parties in interest obtains approval of the Bankruptcy Court for such modification after notice and a hearing; and (ii) such modification shall not materially adversely affect the interests, rights, treatment or distribution of any Class of Creditors under the Plan, or (b) pursuant to the terms of the Plan.

21.    The Plan and all of its provisions, including without limitation, the allowance of any claims and the distributions authorized herein, are conditioned on the closing of the auction sale transactions approved by the Court on or before the Effective Date or thereafter as set forth in the Purchase and Sale Agreements.  In the event that one or more of the auction sales are not consummated, the Debtors may seek to amend the Plan, subject to Court approval, with all parties reserving their rights to object to any amendments or modifications to the Plan and reserving all rights as they existed prior to the Confirmation Date.  In the event that funds may become available hereafter (whether by resolution of the Carlton Fields issues or otherwise) such funds shall be distributed in accordance with the waterfall provisions of the confirmed Plan.

22.    The tax provisions and exemptions of 11 U.S.C., Section 1146 shall apply to any transfers of the Debtor Properties, the issuance, transfer, or exchange of a security, or the making

or delivery of an instrument of transfer, and all transactions contemplated by this Plan shall be made pursuant to Section 1146, free of any documentary, stamp, conveyance or similar tax imposed under state or local law, including without limitation, any transfers in connection with the closing on the auction sales.

23. Because the Plan provides for the liquidation of all, or substantially all of the property of the estate, the Debtors are not discharged under 11 U.S.C. § 1141.

24. The Court shall enter a final decree in the case upon the filing of the final report pursuant to Local Rule 3022-1.

25. The Court retains jurisdiction to hear and determine all matters arising from or relating to the interpretation or implementation of this Order and for all matters identified in Debtors' Plan. The Court also specifically retains jurisdiction over the Debtors' pending adversary proceeding against Carlton Fields.

26. The provisions in Article 10 of the Plan that provide for the Debtors' assumption of all leases and executory contracts are deleted in their entirety and replaced with the following:

> "On the Effective Date of the Plan, all unexpired leases of non-residential real property (including month to month leases) and executory contracts of the Debtors shall be rejected without prejudice to such leases or contract holders entering into new contracts with the applicable buyer at said buyer's sole discretion. Pursuant to Local Rule 6006-1(A):
>
> **Any proof of claim for damages arising from the rejection must be filed with the court on or before the latest of: i) the time for filing a proof of claim pursuant to Bankruptcy Rule 3002(c); ii) 30 days after the entry of the order compelling or approving the rejection of the contract or lease; or iii) 30 days after the effective date of the rejection of the contract or lease."

27. The Court will conduct a post-confirmation status conference in this case on **March 9, 2023 at 11:30 a.m.** The conference shall be conducted on the Court's regular Zoom calendar.

28. To participate in the hearing remotely via Zoom (whether by video or by telephone), you must register in advance no later than 3:00 p.m., one business day before the date

15

of the hearing. To register click on the following registration link or manually enter the registration link in the browser:

https://www.zoomgov.com/meeting/register/vJIsduqrrTIsGwLENmZWZhscEHry3et9jXQ

29. For instructions regarding the video conference, please refer to the General Procedures for Hearings by Video Conference on Judge Mark's web page on the Court's website, https://www.flsb.uscourts.gov/judges/judge-robert-mark.

# # #

Submitted by:
Geoffrey S. Aaronson, Esq
Aaronson Schantz Beiley P.A.
Florida Bar No. 349623
One Biscayne Tower, Suite 3450
2 S. Biscayne Boulevard
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
Email gaaronson@aspalaw.com
*Attorneys for Debtors*

Mr Aaronson is directed to serve all interested parties and file a certificate of service in connection therewith.